STATE OF NORTH CAROLINA v. RONALD ARLESTUS ATTMORE

No. 8815SC407

(Filed 30 December 1988)

**1. Criminal Law § 91.7— continuance on ground of absence of witness—denial proper**

　　The trial court did not err in denying defendant's motion to continue based on the absence of a psychiatric witness where defendant's trial commenced six months after his arrest and four months following his indictment; ample time existed for defendant's lawyer to learn of the psychiatrist's identity and to make efforts to locate her, but counsel did not attempt to do so because he did not view any evidence she might offer as being relevant to defendant's case; defendant made no credible showing that a continuance would have enabled him to secure the witness's attendance; the psychiatrist could not have assisted defendant had he attempted to present an intoxication defense; she would have been of minimal assistance had defendant asserted an insanity defense; and defendant therefore did not suffer prejudice as a result of the denial of his continuance.

**2. Criminal Law § 91.4— continuance to obtain new counsel—no ineffective assistance of counsel—denial of continuance proper**

　　The trial court did not err in denying defendant's motion for continuance to give him time to hire new counsel because his court-appointed lawyer ineffectively represented him by failing to investigate an insanity defense, since defendant was under a burden to show that his counsel's putative deficiencies prejudiced him; though defense counsel deserved no commendation for his pretrial preparation, he had no duty to explore the insanity defense to the extent defendant claimed he should have; and an insanity defense would not have changed the outcome of the trial in any event.

**3. Criminal Law § 64— defendant's evidence of intoxication—court's instructions to defendant not error**

　　There was no merit to defendant's contentions that (1) the trial judge's observation that defense counsel gave defendant "correct legal advice" about the defenses of insanity and intoxication discouraged defendant and his lawyer from asserting either defense, and (2) the trial judge erroneously advised "that intoxication is no defense to crime in North Carolina," since the trial judge's statements could have been taken to mean that defendant could not base an insanity defense on voluntary intoxication, which was a correct statement of the law; but even if the judge's statements about intoxication constituted error, defendant did testify about his drug use on the night in question, and that testimony failed to establish a defense of cocaine-induced intoxication, thus rendering harmless the judge's "misstatement."

**4. Criminal Law § 112.6— voluntary intoxication—instruction not required**

　　Evidence was insufficient to require the trial court to instruct the jury on the defense of voluntary intoxication where defendant testified as to his intent to commit robbery; he testified in great detail about the events which occurred

at the crime scene; he testified that he was "zooted" from crack cocaine on the date of the crime; and the only other suggestion of intoxication was one eyewitness's observation that defendant's eyes appeared "glassy."

**5. Criminal Law § 138.28— punishment for kidnapping—aggravating factor of prior convictions**

A thirty-year sentence for defendant's kidnapping conviction was proper under the Fair Sentencing Act where the evidence supported the trial court's finding that the aggravating factor of a prior conviction for a criminal offense punishable by more than 60 days' confinement outweighed the mitigating factors of drug abuse and defendant's combat service in Viet Nam.

**6. Jury § 7.4— racial discrimination in jury selection—insufficiency of evidence**

Defendant failed to make out a *prima facie* case of racial discrimination in the selection of the petit jury where the jury consisted of six white men, three black women, and three white women; the State had exercised two peremptory challenges; both veniremen struck were black males; and there were no suggestions of racially discriminatory intent within the prosecutor's articulated motives for challenging the two veniremen.

APPEAL by defendant from *Thomas S. Watts, Judge.* Judgment entered 3 December 1987 in Superior Court, PASQUOTANK County. Heard in the Court of Appeals 1 November 1988.

*Attorney General Lacy H. Thornburg by Associate Attorney General David F. Hoke for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr. by Assistant Appellate Defender Mark D. Montgomery for defendant-appellant.*

BECTON, Judge.

On 3 December 1987, a jury convicted the defendant, Ronald Arlestus Attmore, of one count of first degree rape, one count of first degree sex offense, six counts of second degree kidnapping, and one count of robbery with a firearm. The trial judge sentenced defendant to concurrent life terms for the rape and sex offense, a consecutive 30-year term for one of the kidnapping counts, consecutive terms of nine years for each of the remaining five kidnapping counts, and a consecutive 30-year term for the armed robbery offense. Plainly put, the judge sentenced defendant to life imprisonment plus 105 years. From this judgment, defendant appeals. We find no error.

The evidence at trial tended to show that defendant, armed with a handgun, entered a supermarket in Elizabeth City at ap-

proximately 10 p.m. on 2 July 1987. He gathered together six employees and, at various times and for varying lengths of time, confined each of them inside the store's produce cooler. He also used his weapon to obtain the store's money from its manager. Soon after defendant entered the supermarket, the Elizabeth City police surrounded it.

At one point during the siege, defendant took a female employee into an area of the store apart from the produce cooler and away from the other employees. The woman testified that defendant, by threatening her life, forced her to submit to cunnilingus and to have sexual intercourse with him. Defendant testified that he had intercourse with the woman, but he denied coercing her.

After several hours inside the building, defendant used the six employees as a "shield" and walked from the store to a car belonging to another of the employees, Tammy Hoffman. Ms. Hoffman then drove defendant from the supermarket grounds. At a police roadblock in Virginia, defendant surrendered his gun to Ms. Hoffman and allowed her to leave the car. She testified that when the car first encountered the blockade, defendant put the gun to her head and yelled to the police to "back off" or he would "blow [her] . . . head off."

Statements made by defendant during pretrial motions indicated that he had served in the United States Army, receiving an honorable discharge in 1970. While in the military, he performed one-and-a-half tours of duty in Viet Nam, suffering shrapnel wounds in the head and arms during his first tour. Defendant said he began to use drugs while in Viet Nam and continued using them when he returned home. He told the judge that between 1985 and 1987 he had consulted with a psychiatrist, one Dr. Sheryl Farshart, at "a place where Viet Nam veterans go and . . . relate to different experiences." He stated he had volunteered to participate in "research" the psychiatrist conducted and that she had tried to get him "off the drugs [and] into a treatment [program or clinic]."

Defendant testified that on 2 July 1987 he became "really high" on crack cocaine (crack) while in New Bern. "The next thing [he] knew," he was in Elizabeth City. There, he purchased more crack, smoked it, and "by that time" was "really zooted." Melvin

Hopkins, the supermarket manager, testified that during the commission of the crimes defendant's "eyes were glassy."

## I

Defendant's appeal addresses the trial judge's refusal to grant two pretrial motions to continue, a statement by the judge that led defendant to believe he could not use insanity nor intoxication as defenses, the judge's imposition of the maximum sentence for one of the kidnapping convictions, and the judge's statement that defendant failed to make out a *prima facie* case of racial discrimination in the selection of the petit jury. The issues involving the motions to continue and those concerning the insanity and intoxication defenses are sufficiently interrelated by the facts of this case that we may address them together. Essentially, defendant has raised two questions with these assignments of error. The first is whether the trial judge should have granted either of the motions to continue. To answer this question, we must address the second issue: whether defendant's lawyer should have developed an insanity or intoxication defense. We begin by presenting these issues in their factual contexts.

A.  *First Motion to Continue*

On the day set for trial, defense counsel moved to continue the case on the basis of information, furnished him by defendant the previous day, that Dr. Farshart had gone to British Columbia and "was not able [to attend the opening of trial], but [would return to testify] . . . if a continuance could be granted." The lawyer told the court that "other than the general description of [Dr. Farshart's] being in British Columbia," he had no other information as to her whereabouts. When the judge asked if the lawyer had given notice of a potential insanity defense, the latter replied he had not because "there was nothing that . . . [he] felt . . . [he] could present as any type of evidence to show insanity." The judge denied the motion to continue. Counsel then entered pleas of not guilty on behalf of defendant to each of the State's charges.

B.  *Second Motion to Continue, Judge's Statements, and Jury Instructions*

After hearing the continuance motion, the judge ordered a recess. When court reconvened, defense counsel again moved to

continue, this time to give defendant an opportunity to hire a new lawyer. When asked by the judge to explain why he was dissatisfied with his representation, defendant complained, among other objections, that the lawyer had not obtained defendant's military service record and had failed to talk to Dr. Farshart. In effect, defendant said, his lawyer was prepared to try the case without any defense.

Upon questioning, the lawyer stated he had prepared for trial by meeting twice with defendant, by obtaining the police record of the 2 July incident through discovery, and by "do[ing] research and prepar[ing] the jury *voir dire*." He did not have defendant's military records, he said, because he had asked defendant to write to obtain them, but defendant had not done so. The judge denied the motion. After the second denial, defendant asked to be heard and alleged that the court was not treating him fairly. During an ensuing colloquy, the following exchange occurred between the judge and defendant.

The Court: What have you asked [your lawyer] to . . . do [ ]?

Mr. Attmore: He hasn't even sent for my military record . . . and he said that I didn't ask him—inquire to him about grounds for insanity because I was under the influence of drugs, and he gives a plea of—you ask him was a plea of insanity, and he said no. Man, come on now. Don't— please. Just don't even do this to me.

The Court: He gave you correct legal advice.

Later in the discussion, when defendant again claimed he was under the influence of crack on 2 July, the judge told defendant this:

The Court: Let me say to you, sir[,] that the voluntary consumption of a controlled substance is not a defense—

Mr. Attmore: Well, still, that's beside the point.

The Court: —in any criminal action.

Defendant's lawyer continued to represent him throughout the trial. At the conclusion of the evidence, counsel did not request—and the judge did not give—an instruction to the jury on the defense of intoxication.

C. *Analysis: First Motion to Continue*

[1]  A ruling on a motion to continue rests with the discretion of
the trial court and is not open for appellate review absent an
abuse of that discretion. *E.g., State v. Hutchins,* 303 N.C. 321, 343,
279 S.E. 2d 788, 802 (1981). If, however, the motion is based upon
any of a defendant's constitutional rights, the trial court's ruling
is reviewable on appeal. *Id.* State and federal constitutional
guarantees to due process require that every defendant have a
reasonable time and opportunity to gather evidence and to con-
front the State with contrary evidence at trial. *See State v. Bald-
win,* 276 N.C. 690, 698, 174 S.E. 2d 526, 531 (1970). To win a new
trial, defendant must show not only that the denial of the motion
to continue was erroneous, but he must demonstrate that he suf-
fered prejudice as a result of the denial. *See State v. Duncan,* 75
N.C. App. 38, 43, 330 S.E. 2d 481, 485 (1985), *disc. rev. denied,* 314
N.C. 544, 335 S.E. 2d 317 (1985). We hold that defendant has made
neither showing.

     Defendant's trial commenced approximately six months after
his arrest and four months following his indictment. Ample time
existed for defendant's lawyer to learn of Dr. Farshart's identity
and to make efforts to locate her. The record indicates counsel
did not attempt to find Dr. Farshart because he did not view any
evidence she might offer as being relevant to defendant's case.
Furthermore, as of the day of trial, the defense could say only
that Dr. Farshart was in "British Columbia." In *State v. Smith,*
our supreme court observed that defendant Smith "made no cred-
ible showing that he would be able to secure a psychiatrist's serv-
ices even if given more time to do so." 310 N.C. 108, 113, 310 S.E.
2d 320, 323 (1984). The language of *Smith* applies here: defendant
made no credible demonstration that a continuance would have
enabled him to secure Dr. Farshart's attendance. Consequently,
the judge did not err, nor did he abuse his discretion, by refusing
to grant a continuance.

     Even had the judge's denial of the motion been erroneous
constitutionally, defendant has failed to demonstrate prejudice.
The psychiatrist could not have assisted defendant had he at-
tempted to present an intoxication defense; she could not have
testified to defendant's level of impairment on the night of 2 July.
Furthermore, for reasons we will discuss at greater length, she

would have been of minimal assistance had defendant asserted an insanity defense. We do not find, therefore, that defendant suffered prejudice as a result of the denial of his continuance motion.

This assignment of error appears to contain, as an underlying allegation, a charge of ineffective assistance of counsel. Although defendant contends that the trial judge denied counsel adequate time to prepare for trial, we infer that defendant is in fact arguing that his lawyer *inadequately prepared* by not locating and interviewing Dr. Farshart. While we have reached our holding on this assignment of error under a due-process analysis, our holding would be identical had defendant explicitly alleged ineffective representation. Since defendant *has* charged ineffective assistance of counsel in his next assignment of error and since our analysis *infra* would be equally applicable to this issue, we will not elaborate further here.

D.  *Analysis: Second Motion to Continue*

[2] Defendant argues that the judge should have granted the second continuance motion so as to give defendant time to hire new counsel. Primarily, he contends that his court-appointed lawyer ineffectively represented him by failing to investigate an insanity defense. The right to counsel under both the federal and state constitutions includes the right to be effectively represented by that counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 25 L.Ed. 2d 763, 773 (1970); *State v. Lewis*, 321 N.C. 42, 48, 361 S.E. 2d 728, 732 (1987). Therefore, the trial court's denial of the second continuance motion is reviewable on appeal. *See Hutchins*, 303 N.C. at 343, 279 S.E. 2d at 788. Of necessity, our disposition of this issue will entail an examination of the merits of any insanity defense defendant's lawyer might have presented.

The standard in North Carolina for determining whether a criminal defendant was denied the effective assistance of counsel is the test devised by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed. 2d 674 (1984). *State v. Braswell*, 312 N.C. 553, 562-63, 324 S.E. 2d 241, 248 (1985). First, a defendant must show the lawyer's performance was deficient; second, he or she must demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 562, 324 S.E. 2d at 248 (emphasis omitted) (quoting *Strickland*, 466 U.S. at 687, 80 L.Ed. 2d at 693).

Defendant argues that he is not under a burden to show that his counsel's putative deficiencies prejudiced him. Instead, he claims he need only make "a preliminary showing that his sanity [could have] likely be[en] a 'significant factor at trial.'" *State v. (Billy) Moore*, 321 N.C. 327, 335, 364 S.E. 2d 648, 652 (1988) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 74, 84 L.Ed. 2d 53, 60 (1985)). We do not read *Moore* this way, and we reject this argument. In *Moore*, our Supreme Court cited *Ake* for the proposition that when a defendant makes a preliminary showing that his sanity will be a significant issue at trial, the defendant is entitled to a court-appointed psychiatrist to assist in the preparation of the defense. *Id.* The facts and holding of *Moore* are inapposite here; here, defendant complains that his lawyer performed ineffectively by failing either to make contact with Dr. Farshart or to request a psychiatric evaluation of defendant. The *Strickland* test applies fully.

A *Strickland* inquiry need not be conducted in a step-by-step fashion. If it is evident on review that "in the absence of counsel's alleged errors the proceeding would [not] have been different," we need not question whether the lawyer's performance was, in fact, deficient. *Braswell*, 312 N.C. at 563, 324 S.E. 2d at 249. However, in this case, we do choose to consider whether the defendant's lawyer ineffectively assisted defendant.

From our review of the record, defense counsel deserves no commendation for his pretrial preparation. It is very troubling that a lawyer whose client ultimately was consigned to prison for life conducted but two interviews with him prior to trial. Equally troubling is the idea that counsel would put the onus on his imprisoned client to obtain military records; as defendant told the judge, "[Being in jail] is not like being out there in the street whe[re] you can just pick up the phone and call somebody. . . ." But while we question the manner in which this lawyer prepared for trial, "[t]he object of an ineffectiveness claim is not to grade counsel's performance." *State v. Dockery*, 78 N.C. App. 190, 192, 336 S.E. 2d 719, 721 (1985) (quoting *Strickland*, 466 U.S. at 697, 80 L.Ed. 2d at 699). Our inquiry must concern the degree to which the lawyer had an obligation to investigate an insanity defense and whether that defense would have produced a different result at trial had it been offered. Considering the record before us, we believe counsel had no duty to explore the defense to the extent

defendant claims he should have, and we conclude that an insanity defense would not have changed the outcome of the trial in any event.

Under North Carolina law, the test of insanity is whether a defendant, at the time of the alleged criminal act, labored "under such a defect of reason, from disease or deficiency of mind, as to be incapable of knowing the nature and quality of his act, or if he [did] know this, was [he] by . . . defect of reason incapable of distinguishing between right and wrong in relation to such act." *State v. Vickers*, 306 N.C. 90, 94, 291 S.E. 2d 599, 603 (1982). Defendant presented no evidence that he had ever been under psychiatric treatment; he made no showing that Dr. Farshart had had any dealings with him beyond observing the "rap sessions" defendant attended in New York; he offered no indication that Dr. Farshart learned anything of his psychological profile beyond his drug problems; finally, he failed to demonstrate whether his service records contained any information relevant to his mental health. During the hearing on the second continuance motion, defendant had an opportunity to indicate to the judge what psychiatric evidence existed and its relevance to the charges against him. He did not make these showings, and he has made no similar showing on appeal. Absolutely nothing in the record suggests that there was any pertinent psychiatric evidence that the lawyer should have gathered before trial. Ultimately, then, we must conclude that defendant offered nothing to put his lawyer on notice that the latter needed to explore whether an insanity defense existed. His lawyer's failure to pursue psychiatric evidence, therefore, was not constitutionally defective under the *Strickland* test.

Even if defendant had satisfied the first prong of *Strickland*, his claim would nonetheless fail under its second prong. Had defendant's lawyer procured the military records, put Dr. Farshart on the stand, or proffered an insanity defense by some other means, the outcome of the trial would have been, in all likelihood, identical. The State's case against defendant was strong. Five eyewitnesses identified defendant as the perpetrator. Defendant himself gave lucid details of, and admitted committing, each of the crimes with the exception of the rape and sex offense. As to the latter charges, defendant's defense was that the victim consented; he did not claim "to be incapable of knowing the

nature and quality of his act[s]," nor did he contend that he was by "defect of reason incapable of distinguishing between right and wrong. . . ." *Vickers*, 306 N.C. at 94, 291 S.E. 2d at 603.

We hold, therefore, that defendant was not denied the effective assistance of counsel, and we find no error in the trial judge's refusal to grant the second motion to continue.

### E. *Analysis: Trial Judge's Statements*

[3] Defendant builds two arguments around the statements made by the judge during the pretrial motions. First, defendant claims the judge's observation that defense counsel gave defendant "correct legal advice" about the defenses of insanity and intoxication discouraged defendant and his lawyer from asserting either defense. Second, defendant contends that the judge "further advised . . . that intoxication is no defense to crime in North Carolina," advice defendant contends was erroneous.

The colloquy between the judge and defendant requires some interpretation. Defendant told the judge he desired a new lawyer because

> He hasn't even sent for my military record . . . and he said that I didn't ask him—inquire to him about grounds for insanity because I was under the influence of drugs, and he gives a plea of—you ask him was a plea of insanity, and he said no.

The judge responded by saying, "He gave you correct legal advice." If defendant was suggesting that he could have presented an insanity defense based on long-term, military-documented drug use, then the trial judge's statement was correct. Stated differently, if defendant was saying "I asked my lawyer if my being high on crack was grounds for an insanity defense, and he said 'No,'" defendant indeed received "correct legal advice" from his lawyer. Voluntary consumption of drugs cannot be the basis of an insanity defense. *See State v. Austin*, 320 N.C. 276, 296, 357 S.E. 2d 641, 654 (1987), *cert. denied*, --- U.S. ---, 98 L.Ed. 2d 224 (1987) (voluntary intoxication not legal excuse for crime). In the same light, the judge did not misstate the law by stating that "voluntary consumption of a controlled substance is not a defense . . . in any criminal action" if the judge meant that "you cannot base an insanity defense on voluntary intoxication."

If, on the other hand, defendant was suggesting that voluntary intoxication could be a defense to the criminal charges, then the trial judge was wrong since intoxication may affect one's ability to form the specific intent required to commit the crime of robbery with a firearm. *See State v. White*, 322 N.C. 506, 515-16, 369 S.E. 2d 813, 817-18 (1988). For the sake of argument, we will presume that the judge's statements about intoxication constituted error. To begin with, although defendant contends "his lawyer was put on notice [by the judge's comments] not to try to introduce evidence of defendant's mental condition on the night in question," we note that defendant *did* testify about his drug use on the night of 2 July. That testimony failed to establish a defense of cocaine-induced intoxication and thus rendered harmless the judge's "misstatement." Moreover, defendant's assignment of error addressing the jury charge further demonstrates that the judge's "error" was harmless. We will explore this question separately.

F.  *Analysis: Jury Instruction on Intoxication*

[4] Defendant argues that the trial judge should have instructed the jury on the defense of voluntary intoxication. We point out that defendant did not object to the jury charge before the jury retired. Thus, he has waived his right to argue this question on appeal, unless the judge's failure to submit the instruction amounted to plain error. N.C. R. App. P. 10(b)(2) (1988); *see State v. Price*, 310 N.C. 596, 600-01, 313 S.E. 2d 556, 560 (1984). We do not find plain error in this case.

To be entitled to an instruction on voluntary intoxication, "the evidence must show that at the time of the [offenses] the defendant's mind and reason were so completely intoxicated and overthrown that he could not form a specific intent [to commit the offenses]." *State v. Gerald*, 304 N.C. 511, 521, 284 S.E. 2d 312, 318-19 (1981). In the absence of such evidence, the court need not instruct on the intoxication defense. *Id*. at 521, 284 S.E. 2d at 319. Just as the record in this case was devoid of any evidence suggesting defendant's insanity, so is there a paucity of evidence demonstrating that defendant was intoxicated to the extent required by *Gerald*.

On the witness stand, defendant said this:

I wanted some more drugs, and I didn't have any more money to get the kind of drugs I wanted. And my intentions [were] just strictly that. Go get some — rob a store and get some money and get some drugs.

The only charge against defendant to which voluntary intoxication was relevant was the charge of robbery with a firearm. *See State v. Boone*, 307 N.C. 198, 209, 297 S.E. 2d 585, 592 (1982) (intoxication not a defense to crimes of first degree rape and first degree sex offense); *State v. Wilson*, 73 N.C. App. 398, 405, 326 S.E. 2d 360, 365 (1985), *disc. rev. denied*, 313 N.C. 514, 329 S.E. 2d 400 (1985) (kidnapping not specific intent crime), *but see State v. Moore*, 315 N.C. 738, 743, 340 S.E. 2d 401, 404 (1986) (dicta that kidnapping is specific intent crime). Defendant not only testified as to his intent to commit robbery, he testified in great detail about the events that occurred in the supermarket. Beyond defendant's own statements that he was "zooted" on 2 July, the only suggestion of intoxication was Melvin Hopkins' observation that defendant's eyes appeared "glassy."

We do not find this evidence sufficient to have entitled defendant to an instruction on intoxication, and we find no error in the failure of the judge to submit the charge to the jury. At the same time, therefore, if the judge misstated the law to defendant about intoxication as a defense to the formation of specific intent, this error was harmless in that, ultimately, no evidence came forth at trial that would have required the judge to instruct on that defense. Thus, we overrule these assignments of error.

## II

[5] Defendant next argues that the trial judge applied an "unspoken aggravating factor," in contravention of the Fair Sentencing Act, N.C. Gen. Stat. Sec. 15A-1340.4 (1983), by imposing the maximum sentence of 30 years for the kidnapping of Tammy Hoffman. We disagree.

At sentencing, the judge found as an aggravating factor that defendant had a prior conviction for a criminal offense punishable by more than 60 days' confinement. He found as mitigating factors defendant's drug abuse and his combat service in Viet Nam. The judge found that the aggravating factor outweighed the mitigating factors and, on this basis, he sentenced defendant to the maximum sentence of 30 years for the Hoffman kidnapping.

State v. Attmore

The discretion of the sentencing judge to impose a sentence that is greater than the presumptive term is controlled by the requirement that the judge make written findings that the aggravating factors in the case outweigh the mitigating factors. *See State v. Ahearn*, 307 N.C. 584, 596, 300 S.E. 2d 689, 696-97 (1983). Those findings must be supported by the greater weight of the evidence. *Id.* So long as the appellate court discovers no error in the trial judge's findings, it presumes that the trial court's judgment is "valid and just." *Id.* at 597, 300 S.E. 2d at 697 (quoting *State v. Pope*, 257 N.C. 326, 335, 126 S.E. 2d 126, 133 (1962)). Detecting no error in the judge's finding that defendant's prior conviction outweighed the mitigating factors, we hold the 30-year sentence for the kidnapping conviction to be proper under the Fair Sentencing Act.

### III

[6] Defendant's final assignment of error concerns the judge's statement that defendant had failed to make out a *prima facie* case of racial discrimination in the selection of the petit jury. During the jury-selection process, the State exercised two peremptory challenges. Both veniremen struck were Black males. We note, once more, that no objection was entered at trial to the State's peremptory challenges, nor did defendant challenge the petit jury before it was empanelled. Failure to object at trial normally precludes our consideration of the issue defendant attempts to raise here. *See State v. Robbins*, 319 N.C. 465, 488, 356 S.E. 2d 279, 293 (1987), *cert. denied*, --- U.S. ---, 98 L.Ed. 2d 226 (1987). N.C. Gen. Stat. Secs. 15A-1446(a), (b) (1988). However, even if defendant had properly preserved this question, his assignment of error would fall, nonetheless, on its merits.

After the jury had been selected, the judge said, "Because there is the vague possibility that at some remote time in the future . . . some *Batson* issue could arise . . . I want to put the following things in the record." Inviting the prosecutor and defense counsel to "correct" him if he "misstate[d] anything," the judge proceeded to note the race and sex of each person who had been examined during the jury *voir dire*, which people had been struck, and which side had initiated the various challenges. Finally, he requested, but did not order, the prosecutor to explain the reasons for the State's peremptory challenges, which the prosecutor did.

The jury that heard defendant's case consisted of six White men, three Black women, and three White women. Two Black men sat as alternates.

After a jury has been empanelled, a defendant may establish a *prima facie* case of invidious racial discrimination in a prosecutor's use of peremptory challenges by making three showings: (1) that defendant is a member of a cognizable racial group; (2) that the prosecutor used the challenges to exclude members of defendant's race; and (3) "that these and other relevant facts and circumstances, as they are set out in the record, raise an inference of racially discriminatory intent on the part of the state." *Robbins*, 319 N.C. at 490, 356 S.E. 2d at 294. If such a *prima facie* showing of discrimination is made, the burden then shifts to the State to advance neutral reasons for its challenges. *Batson v. Kentucky*, 476 U.S. 79, 97, 90 L.Ed. 2d 69, 88 (1986); *Robbins*, 319 N.C. at 489, 356 S.E. 2d at 293-94.

The record indicates that defendant failed to make a *prima facie* showing of discrimination; we do not find suggestions of racial animus within the prosecutor's articulated motives for challenging the two veniremen. This assignment of error is overruled.

IV

We find no error in the trial of this case.

No error.

Judges EAGLES and GREENE concur.