**STATE v. BRICE**

[167 N.C. App. 72 (2004)]

No error.

Judges BRYANT and GEER concur.

———————————

STATE OF NORTH CAROLINA v. WILLIAM DUGGIE BRICE, Defendant

No. COA03-588

(Filed 16 November 2004)

## 1. Evidence— officer giving payments to informant for bills after cooperation and prior to trial—credibility

The trial court did not err in a trafficking in cocaine by possession and transportation case by denying defendant's motion to dismiss the charges based on a police officert's payments totaling $350.00 to the State's material witness for her bills several weeks after the witness cooperated in the operation that led to defendant's arrest and prior to his trial, because: (1) both the witness and the officer were subjected to vigorous cross-examination on the issue of the payments, and it is the province of the jury to assess and determine witness credibility; and (2) the evidence does not support defendant's characterization of the two payments as a quid pro quo payment for her testimony since they were not made to secure either her cooperation in defendant's arrest or her testimony at trial.

## 2. Appeal and Error— preservation of issues—failure to object—inaudible audiotape

Although defendant contends the trial court erred in a trafficking in cocaine by possession and transportation case by allowing the State to play for the jury during its case-in-chief an audiotape recorded by an informant during her 9 July 2002 trip to and from Charlotte with defendant even though defendant contends the tape was inaudible, defendant failed to preserve this issue for review because although defendant objected to admission of the tape into evidence prior to a proper foundation being laid, defendant did not object to the State playing the tape for the jury after the trial court ruled that it had been properly authenticated.

STATE v. BRICE

[167 N.C. App. 72 (2004)]

### 3. Evidence— audiotape—different machine used to play tape

The trial court did not abuse its discretion in a trafficking in cocaine by possession and transportation case by allowing the jury during its deliberations to listen to portions of an audiotape, recorded by an informant during her 9 July 2002 trip to and from Charlotte with defendant, on a machine different from the one used to play the same tape during the State's case-in-chief, because: (1) defendant does not allege that the tape itself was enhanced or altered in any way between the time it was played during the State's case-in-chief and during the jury's deliberations, and nothing in the record suggested that such was the case; and (2) the very fact that the jury asked to listen to portions of the tape three separate times during its deliberations, and to change seats within the jury box in order to give each juror a chance to sit as close as possible to the tape player, indicates that the second machine did nothing to enhance the tape's clarity.

Appeal by defendant from judgment entered 30 January 2003 by Judge Richard D. Boner in Catawba County Superior Court. Heard in the Court of Appeals 5 February 2004.

*Attorney General Roy Cooper, by Assistant Attorney General James C. Holloway, for the State.*

*Sigmon Sigmon & Isenhower, by Gene Sigmon for defendant-appellant.*

ELMORE, Judge.

William Duggie Brice (defendant) appeals from judgment entered upon jury verdicts finding him guilty of one count each of trafficking in cocaine by possession and trafficking in cocaine by transportation. For the reasons stated herein, we conclude that defendant received a fair trial, free of prejudicial error.

The evidence presented by the State at trial tended to show that in early July 2002 Beverly Jobe contacted Lieutenant Tracy Ledford of the Maiden Police Department and informed him that she had a problem using crack cocaine and wanted to stop. Jobe told Lieutenant Ledford that she "needed away from [defendant]" because defendant regularly provided her with crack cocaine. Lieutenant Ledford in turn contacted Sergeant Robert Curtis Moore of the Maiden Police Department and related to Sergeant Moore what Jobe had told him regarding Jobe's use of crack cocaine provided by defendant.

On 8 July 2002, Sergeant Moore and Investigator Bart Lowdermilk of the Catawba County Sheriff's Department met with Jobe at her apartment, where she reiterated both her desire to stop using crack cocaine and her claim that defendant often provided her with drugs. Sergeant Moore asked Jobe "if she could assist in setting up a situation where the narcotics division was aware that controlled substances were going to be transported or brought back to [defendant's] residence." Jobe informed Sergeant Moore that defendant was going to drive her to Charlotte on 9 July 2002, where defendant intended to buy drugs and after which they would return to defendant's home in Maiden. According to Jobe, she had previously accompanied defendant on eight or nine similar trips.

On 9 July 2002, Sergeant Moore provided Jobe with a small tape recorder, which Jobe agreed to carry in her purse in order to record any conversation during the drive to and from Charlotte. Defendant picked up Jobe from her apartment and they drove in defendant's car to Charlotte, where Jobe testified that defendant purchased rock and powder cocaine. Jobe testified that, per defendant's instruction, she placed the drugs between her legs while seated in the front passenger seat of defendant's car, and they returned to Maiden. Maiden police officers resumed their surveillance of defendant's car as it re-entered Catawba County, and as defendant and Jobe neared defendant's home, Maiden Police Sergeant Michael Eaker pulled behind defendant's car and activated his blue lights. Jobe testified that defendant "kept yelling to [her] to put the dope in [her] pants" before pulling over.

Sergeant Eaker was quickly joined at the scene by other officers, including Sergeant Moore and Investigator Lowdermilk, and both defendant and Jobe were asked to step out of the car. Sergeant Moore and Investigator Lowdermilk each testified that they then observed the drugs in plain view on the passenger seat. Both defendant and Jobe were then arrested. Defendant was charged with, and subsequently indicted for, trafficking in cocaine by possession, trafficking in cocaine by transportation, and maintaining a vehicle for keeping or selling a controlled substance. Sergeant Moore testified that Jobe was taken into custody at the scene "[f]or safety reasons" because he feared that defendant might threaten or attempt to harm Jobe if defendant became aware that Jobe had cooperated with the police. Jobe was charged with trafficking in cocaine by possession, but the charge was subsequently dropped. While still at the scene, Jobe gave Sergeant Moore the recording device and audio-

STATE v. BRICE

[167 N.C. App. 72 (2004)]

tape she had used to record conversation between herself and defendant during the trip.

At trial, Jobe testified on direct examination that about a month after defendant's arrest, she got behind on her bills and called Sergeant Moore and "asked him if he would help me . . . keep my bills caught up so I wouldn't lose my apartment." Sergeant Moore testified that he gave her $100.00 on that occasion and another $250.00 after she called approximately two months later and asked for additional help with her bills. Sergeant Moore testified that the funds came from the Catawba County Sheriff's Department.

The audiotape which Jobe recorded by leaving the tape recorder running in her purse during her 9 July 2002 trip to Charlotte with defendant was admitted into evidence. Sergeant Moore testified that he was able to identify the voices of defendant and Jobe on the tape, and that the quality of the recording was "[o]n a scale of zero or one to ten . . . three to four maybe[.]" Sergeant Moore testified that music from the car's radio was also audible on the tape. The tape was then played in its entirety for the jury. Thereafter, the State rested, and defendant presented no evidence. Defendant renewed his earlier motion to dismiss on the grounds that Jobe, the State's witness, had been paid by the State, and also moved to dismiss for insufficiency of the evidence. The trial court denied both motions and, following the evening recess, the jury was instructed and began its deliberations the next morning.

During deliberations, the jury asked to hear the first and last ten minutes of the tape again. Because the device which had been used to play the tape during the State's case-in-chief was no longer available, the prosecutor arranged to have another tape player brought to the courtroom. The trial court overruled defendant's objection to the use of a tape player different from the one used during the State's evidence, and the requested portions of the tape were played for the jury. After the first ten minutes were played, the jury foreman noted that some of the jurors were having trouble hearing and asked if the jurors could switch seats and hear a portion of the first ten minutes again. The trial court allowed the jurors in the back row of the jury box to switch with the jurors in the front row and played the requested portion again, followed by the tape's last ten minutes. Defense counsel then moved for a mistrial, which the trial court denied. After further deliberations, the jury asked to hear the tape's first ten minutes again. The trial court, over defense counsel's objection, allowed the jury's request.

The jury thereafter completed its deliberations and returned guilty verdicts on the trafficking in cocaine by possession and trafficking in cocaine by transportation charges, and a not guilty verdict on the maintaining a vehicle for keeping or selling a controlled substance charge. The trial court sentenced defendant to between 35 and 42 months imprisonment on each conviction, with the sentences to run concurrently. Defendant appeals.

[1] By his first assignment of error, defendant contends the trial court erred by denying his motion to dismiss based on Sergeant Moore's payment of $350.00 to the State's material witness, Jobe, several weeks after Jobe cooperated in the operation that led to defendant's arrest and prior to his trial. Defendant notes that this is an issue of first impression in North Carolina and urges this Court to fashion a rule whereby "[a] witness cannot be paid for testimony in a civil or criminal trial[.]" The only authority defendant cites in support of this argument is dicta from a Ninth Circuit Court of Appeals decision stating that "[a] prosecutor who does not appreciate the perils of using rewarded criminals as witnesses risks compromising the truth-seeking mission of our criminal justice system." *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1992). However, we find it significant that the *Bernal-Obeso* court, after acknowledging that "our criminal justice system could not adequately function without information provided by informants and without their sworn testimony in certain cases[,]" *Bernal-Obeso*, at 334, further stated as follows:

> [t]hus, we have decided on balance not to prohibit, as some have suggested, the practice of rewarding self-confessed criminals for their cooperation, or to outlaw the testimony in court of those who receive something in return for their testimony. Instead, we have chosen to rely on (1) the integrity of government agents and prosecutors not to introduce untrustworthy evidence into the system, *Berger v. United States*, 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. Ct. 629 (1935), *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976); (2) trial judges and stringent discovery rules to subject the process to close scrutiny, *United States v. Heath*, 260 F.2d 623, 626 (9th Cir. 1958); (3) defense counsel to test such evidence with vigorous cross examination, *Davis v. Alaska*, 415 U.S. 308, 316, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974) ("Cross examination is the principle means by which the believability of a witness and the truth of his testimony are tested."), *United States v. Butler*, 567 F.2d 885, 890 (9th Cir. 1978); and (4)

the wisdom of a properly instructed jury whose duty it is to assess each witness's credibility and not to convict unless persuaded beyond a reasonable doubt of the accused's guilt.

*Bernal-Obeso*, 989 F.2d at 335.

In the present case, defendant appears to argue that Jobe's request and receipt of money from Sergeant Moore after her cooperation in defendant's arrest but before trial rendered her testimony so inherently unreliable that the court erred in denying defendant's motion to dismiss. We are not persuaded. Our Rules of Evidence provide that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C. Gen. Stat. § 8C-1, Rule 611(b) (2003). Our review of the trial transcript indicates that both Jobe and Sergeant Moore were subjected to vigorous cross-examination on the issue of Sergeant Moore's payments to Jobe. Our Supreme Court has stated that it is a "long-standing principle in our jurisprudence . . . that it is the province of the jury, not 'the court, to assess and determine witness credibility." *State v. Hyatt*, 355 N.C. 642, 666, 566 S.E.2d 61, 77 (2002), *cert denied*, 537 U.S. 1133, 154 L. Ed. 2d 823 (2003).

We also find it significant that the evidence does not support defendant's characterization of Sergeant Moore's two payments totaling $350.00 to Jobe as a *quid pro quo* payment for her testimony. Jobe testified that "[she] was already going to testify against [defendant]" when she "asked [Sergeant Moore] for some money to help [her] pay [her] bills . . . [Sergeant Moore] didn't ask [her] to do anything." Jobe testified that at the time she asked Sergeant Moore for money, she was separated from her husband and her drug dependency kept her from working. Jobe also testified that prior to defendant's arrest, she relied on him to periodically give her money for, among other things, groceries. Sergeant Moore testified that he gave money to Jobe because approximately a month after defendant's arrest, Jobe "contacted [him], advised she was behind in some bills, and asked if there was anything we could possibly do." Sergeant Moore further testified that he received a bill from the City of Maiden stating that Jobe was behind on her power bill and threatening to discontinue service if it was not paid, and that upon Jobe's payment of the bill he received a receipt from the city. This testimony supports the State's contention that Sergeant Moore's payments to Jobe were not made to secure either her cooperation in defendant's arrest or her testimony at trial.

We conclude that defendant's first assignment of error is without merit.

By his second assignment of error, defendant contends the trial court erred by (1) allowing the State, during its case-in-chief, to play for the jury the audiotape recorded by Jobe during her 9 July 2002 trip to and from Charlotte with defendant, on the grounds that the tape was inaudible; and (2) allowing the jurors to hear portions of the same tape again during their deliberations, on the grounds that the tape was played using a machine different from the one used during the State's evidence. At the outset we note that because defendant has improperly raised multiple issues of law in this single assignment of error, this assignment of error is subject to dismissal. N.C.R. App. P. 10(c)(1); *State v. Williams*, 350 N.C. 1, 9, 510 S.E.2d 626, 633, *cert. denied*, 528 U.S. 880, 145 L. Ed. 2d 162 (1999). However, we elect to use our discretion pursuant to Rule 2 of our Rules of Appellate Procedure and consider both issues of law raised by this assignment of error.

[2] Defendant first argues that the trial court erred by allowing the State to play the tape during its case-in-chief, on the grounds that the tape was inaudible. Defendant objected to admission of the tape into evidence prior to a proper foundation being laid; however, after the trial court ruled that it had been properly authenticated defendant did not object to the State playing the tape for the jury. Defendant has therefore failed to preserve this issue for appellate review. N.C.R. App. P. 10(b)(1); *State v. Scott*, 343 N.C. 313, 332, 471 S.E.2d 605, 616-17 (1996).

[3] Defendant next asserts that the trial court erred by twice allowing the jury, during its deliberations, to listen to portions of the tape on a machine different from the one used to play the same tape during the State's case-in-chief. In his brief, defendant argues that playing the tape on a different machine during deliberations constituted the improper introduction of "new evidence" by the State, apparently on the grounds that the tape was more audible when played on the second machine, and that defendant should have been given the opportunity to rebut this "new evidence" pursuant to N.C. Gen. Stat. § 15A-1226(a) (2003).

In North Carolina, "[t]he manner of the presentation of evidence is largely in the discretion of the trial judge. His control of the case will not be disturbed absent a manifest abuse of discretion." *State v. Harris*, 308 N.C. 159, 168, 301 S.E.2d 91, 97 (1983). In denying defend-

ant's motion for a mistrial after the tape was played on the different machine for the jury during its deliberations, the trial judge stated that he "couldn't personally tell any difference between what [he] heard today and what [he] heard yesterday." Defendant does not allege that the tape itself was enhanced or altered in any way between the time it was played during the State's case-in-chief and during the jury's deliberations, and we discern nothing in the record suggesting that such was the case. The very fact that the jury asked to listen to portions of the tape three separate times during their deliberations, and to change seats within the jury box in order to give each juror a chance to sit as close as possible to the tape player, indicates that the second machine did nothing to enhance the tape's clarity. We are unable to say on these facts that the trial court abused its discretion in allowing the jury, during its deliberations, to hear the tape played on a machine different from the one used during the State's case-in-chief. Accordingly, this assignment of error is overruled.

No error.

Judges TIMMONS-GOODSON and BRYANT concur.