STATE OF NORTH CAROLINA v. LUCAS THEODORO BORGES

No. COA06-476

(Filed 15 May 2007)

**1. Sentencing— aggravated range—after *Blakely*, before statute—special verdict—no error**

The trial court did not err by denying defendant's motion to prohibit sentencing in the aggravated range where the offense occurred after *Blakely v. Washington,* 542 U.S. 296, but before North Carolina's sentencing act was amended. It has been held that North Carolina law permits submission of aggravating factors to the jury by a special verdict.

**2. Constitutional Law— ex post facto—aggravated second-degree murder**

Ex post facto clauses were not violated by a conviction for "aggravated second-degree murder" where defendant argued that the crime did not exist until after the sentencing changes that followed *Blakely v. Washington.* Defendant's ex post facto argument was preserved for review because it falls within N.C.G.S. § 15A-1446(d), but fails because the trial court had the authority to use a special verdict regardless of the passage of the *Blakely* Act. Defendant was not improperly punished for an offense of which he was innocent on the date of the crime. U.S. Const. art. I, § 10; N.C. Const. art. I, § 16.

**3. Sentencing— traffic accident—second-degree murder—assault—aggravating factor—risk of death to more than one person**

Where defendant was convicted of second-degree murder and assault with a deadly weapon inflicting serious injury, additional facts were required to prove the aggravating factor that defendant knowingly created a great risk of death by use of a device hazardous to more than one person. There was no violation of N.C.G.S. § 15A-1340.16(d) by the submission of this aggravating factor.

**4. Sentencing— instructions—consideration of aggravating factor—not prejudicial—overwhelming evidence**

There was no plain error in the trial court's instructions on consideration of the aggravating factor of use of a weapon haz-

ardous to more than one person. Even if the instruction was erroneous, the evidence against defendant was overwhelming.

**5. Sentencing— jurisdiction—aggravating factor**

The trial court had jurisdiction to sentence defendant where the jury did not find defendant guilty of "aggravated second degree murder" or "aggravated assault with a deadly weapon inflicting serious injury." The jury found each necessary element as well as the aggravating factor, the procedure used by the trial court was proper, and the instruction on the aggravating factor was sufficient.

Appeal by Defendant from judgments dated 13 July 2005 and 4 August 2005 by Judge John W. Smith in Superior Court, Onslow County. Heard in the Court of Appeals 6 December 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert C. Montgomery and Assistant Attorney General Patricia A. Duffy, for the State.*

*Bruce T. Cunningham, Jr. for Defendant.*

McGEE, Judge.

Lucas Theodoro Borges (Defendant) was indicted on 8 March 2005 on one count of second-degree murder, four counts of assault with a deadly weapon inflicting serious injury, one count of reckless driving to endanger, one count of driving while impaired, and one count of driving the wrong way on a dual lane. The indictments for second-degree murder and each count of assault with a deadly weapon inflicting serious injury included a separate count designated "aggravating factor" which read: "[D]efendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." Defendant was convicted of all the charges, and the jury found aggravating factors in the second-degree murder charge and the four charges of assault with a deadly weapon inflicting serious injury. The trial court sentenced Defendant in the aggravated range to a minimum of 196 months and a maximum of 245 months in prison on the second-degree murder charge. On each of the charges of assault with a deadly weapon inflicting serious injury, the trial court sentenced Defendant in the aggravated range to a minimum of 31 months and a maximum of 47 months in prison. Three of the assault sentences were to run consecutively, with one sentence to run concur-

rently. Defendant also received sentences on the three remaining charges. Defendant appeals.

Prior to trial, Defendant filed a motion to prohibit an aggravated range sentence, contending that the offenses in this case were committed after the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004), but before the amendments to our sentencing act became effective. Defendant argued that since the newly enacted amendments did not apply to him, no procedure to apply aggravating factors was in place, and the trial court was prohibited from sentencing Defendant in the aggravated range. The trial court denied Defendant's motion and informed the parties that the aggravating factor would be submitted to the jury to comply with *Blakely*. The case proceeded to trial.

The State's evidence tended to show that a deadly automobile collision occurred on 3 November 2004, in which Jamie Marie Lunsden was killed, and William Beau Wilson, Melanie Ritter, Candace Lee, and Mike Clark were very seriously injured. Paramedics responded to the scene of the crash to tend to the injuries. Rosina Babcock (Babcock) treated Defendant and testified that when Defendant was brought into an ambulance, "[t]here was an overwhelming aroma" that "was making [her] eyes burn." She also noticed a black residue on Defendant's gums, teeth, and tongue. Babcock testified she first believed Defendant had eaten licorice or black jelly beans, but that the aroma she smelled did not support that conclusion. Defendant denied that he had been drinking or using any drugs.

Trooper Brian Cole (Trooper Cole) of the North Carolina Highway Patrol testified that he responded to the collision. Trooper Cole spoke with Defendant, who stated that he had been pulled off to the side of the road speaking on his cell phone. Defendant pulled back into traffic and was traveling in the proper lane when he was hit by another car. Trooper Cole also noticed a strange odor on Defendant's breath, though Defendant denied that he had been drinking, or that he had been "huffing" any type of chemical. Trooper Cole asked for Defendant's driver's license, which Defendant said was in his car. Trooper Cole looked in Defendant's car for the license and found two canisters of quick diesel starter fluid.

Analysis by the State Bureau of Investigation determined that the canisters contained ethyl ether. After Trooper Cole obtained a search warrant, Defendant's blood was drawn and analyzed. Defendant's blood contained five milligrams per deciliter of diethyl ether. Paul

Glover (Glover), a research scientist with the N.C. Department of Health and Human Services, testified as an expert witness. Glover testified that at the time "when exposure to ether was terminated," the concentration of diethyl ether in Defendant's blood would likely have been five times higher than when the sample was taken. Glover also testified that in concentrations of ten to fifty milligrams, a person would exhibit "analgesia without any lack of consciousness, and in this range . . . we would see someone who would be demonstrating . . . classic intoxication or signs and symptoms of intoxication."

Defendant presented no evidence.

The trial court instructed the jury that if it found Defendant guilty of second-degree murder or involuntary manslaughter, it must consider the aggravating factor. The trial court further instructed the jury that

> [t]he burden is upon the State to prove the special issue beyond a reasonable doubt. So if the State has proven to you beyond a reasonable doubt that . . . [D]efendant knowingly created a risk of death to more than one person by means of a weapon or device, which would normally be hazardous to the lives of more than one person, you will answer the special issue "yes." If you do not so find or have a reasonable doubt, you'll answer that issue "no."

A similar charge was given as to each of the assault charges.

On the second-degree murder charge, the trial court submitted to the jury a verdict sheet which permitted the jury to find Defendant guilty of second-degree murder, guilty of involuntary manslaughter, guilty of misdemeanor death by motor vehicle, or not guilty. Below these options, the following language was included:

> If you have found . . . [D]efendant guilty of either second-degree murder or involuntary manslaughter on the foregoing charge, you will then answer the following question: Do you find . . . [D]efendant knowingly created a risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person?

The verdict sheet required the jury to answer "yes" or "no". The same question was submitted to the jury on each of the charges of assault with a deadly weapon inflicting serious injury. The jury answered the question affirmatively in its verdict on the second-degree murder charge, and in its verdict on each of the assault charges.

[1] Defendant first argues that the trial court erred by denying his motion to prohibit an aggravated range sentence. Defendant argues that the legislative act amending our structured sentencing act does not apply to offenses committed before 30 June 2005 and, therefore, no statutory procedure applied for a jury trial of aggravating factors for Defendant's offense. According to Defendant, this circumstance precluded the trial court from sentencing him in the aggravated range. We disagree.

The N.C. General Assembly enacted Session Law 2005-145, "An Act to Amend State Law Regarding the Determination of Aggravating Factors in a Criminal Case to Conform with the United States Supreme Court Decision in Blakely v. Washington" to conform North Carolina's sentencing procedures to the mandate of *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). 2005 N.C. Sess. Laws, ch. 145, § 1 (the *Blakely* Act). Under these amendments, aggravating factors must be submitted to a jury, which must determine whether the State has proven the factors beyond a reasonable doubt. *Id. See also State v. Blackwell*, 361 N.C. 41, 45, 638 S.E.2d 452, 455 (2006).

In *Blackwell*, our Supreme Court discussed recent changes to North Carolina's sentencing procedures based upon *Blakely* and our legislative response. *Id.* at 45, 638 S.E.2d at 455-56. The issue before the Court in *Blackwell* involved whether a *Blakely* error at the defendant's trial was harmless error. *Id.* at 45, 638 S.E.2d at 456. In *Blackwell*, the defendant argued that the *Blakely* error was not harmless because "the trial court allegedly lacked a procedural mechanism by which to submit the challenged aggravating factor to the jury." *Id.* The Court disagreed, noting that "prior to the *Blakely* Act, special verdicts were the appropriate procedural mechanism under state law to submit aggravating factors to a jury." *Id.* at 49, 638 S.E.2d at 458.

In *State v. Johnson*, 181 N.C. App. 287, 639 S.E.2d 78, *disc. review denied*, 361 N.C. 364, 646 S.E.2d 532 (2007), this Court addressed another argument similar to Defendant's. In *Johnson*, the defendant argued that the trial court erred in aggravating his sentences because it lacked authority to sentence defendant within the aggravated range. *Id.* at 291, 639 S.E.2d at 80. According to the defendant in *Johnson*, the trial court lacked authority because the *Blakely* Act did not apply to him. *Id.* at 292, 639 S.E.2d at 81. In *Johnson*, the defendant was not arguing that his rights were violated under *Blakely*, "but that the trial court acted without authority when it fashioned its own remedy to comply with *Blakely* before our legislature had amended

the structured sentencing act." *Id.* at 292, 639 S.E.2d at 81. In reliance on our Supreme Court's decision in *Blackwell,* this Court held that North Carolina law permitted the submission of aggravating factors to a jury by way of a special verdict. *Id.* at 292-93, 639 S.E.2d at 82. We find the procedure used by the trial court in *Johnson* to be indistinguishable from the procedure used by the trial court in the present case, and to be approved by our Supreme Court in *Blackwell.* Accordingly, Defendant's argument must fail.

**[2]** Defendant also argues that his aggravated sentence violated the *ex post facto* clauses in Article 1, Section 16 of the North Carolina Constitution and Article 1, Section 10 of the United States Constitution. Defendant argues that on the day of his offense, 3 November 2004, no crime known as "aggravated second degree murder" existed in North Carolina. Defendant contends that such a crime did not exist until either (1) 30 June 2005 when the General Assembly enacted the *Blakely* Act, or (2) 1 July 2005, when the Supreme Court held portions of the Structured Sentencing Law unconstitutional in *State v. Allen,* 359 N.C. 425, 615 S.E.2d 256 (2005), *withdrawn,* 360 N.C. 569, 635 S.E.2d 899 (2006). Therefore, Defendant argues it was error to punish him for committing "aggravated second degree murder." Defendant filed a motion for appropriate relief with this Court on 3 April 2007. Defendant concedes he did not articulate this objection in his written motion to prohibit an aggravated sentence, nor during oral argument of his motion. Defendant contends, however, that this argument is preserved for our review pursuant to N.C. Gen. Stat. § 15A-1446(d)(18). Because we find Defendant's *ex post facto* claim preserved under this statute, we do not address Defendant's additional ineffective assistance of counsel claim and we deny his motion for appropriate relief.

N.C. Gen. Stat. § 15A-1446(d) (2005) permits appellate review of certain errors "even though no objection, exception or motion has been made in the trial division." The statute permits appellate review of the claimed error where "[t]he sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law." N.C.G.S. § 15A-1446(d)(18). We conclude that Defendant's *ex post facto* argument falls within this statutory provision, and we therefore proceed to the merits of Defendant's *ex post facto* argument.

In response to Defendant's contention that he was convicted of "aggravated second degree murder," a crime which he alleges did not exist on the date of Defendant's offense, the State argues that at the

time of Defendant's offense, Defendant could have been convicted of second-degree murder and sentenced in the aggravated range. Likewise, after the Supreme Court decided *Allen* and the General Assembly enacted the *Blakely* Act, Defendant could still be convicted of second-degree murder and sentenced in the aggravated range. The *Blakely* Act changed only whether the trial court could find an aggravating fact and the standard of proof required in order to comply with *Blakely*, neither of which was improper at Defendant's trial. Therefore, according to the State, no *ex post facto* violation occurred. We agree.

*Ex post facto* laws are prohibited by both the United States Constitution and the North Carolina State Constitution. *See* U.S. Const. art. I, § 10 ("No state shall . . . pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts[.]"); N.C. Const. art. I, § 16 ("Retrospective laws, punishing acts committed before the existence of such laws and by them only declared criminal, are oppressive, unjust, and incompatible with liberty, and therefore no ex post facto law shall be enacted."). The *ex post facto* clauses of the federal and state constitutions prohibit

> "[e]very law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. . . . Every law that aggravates a crime, or makes it greater than it was, when committed. . . . Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. . . . Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender."

*State v. Robinson*, 335 N.C. 146, 148, 436 S.E.2d 125, 127 (1993) (quoting *Calder v. Bull*, 3 U.S. 386, 390, 1 L. Ed. 648, 650 (1798)). Further, "both the federal and state constitutional *ex post facto* provisions are evaluated under the same definition[.]" *State v. Wiley*, 355 N.C. 592, 625, 565 S.E.2d 22, 45 (2002).

At the time of the deadly collision at issue in this case, both *Blakely* and *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000), had been decided. Thus, the trial court was precluded from finding any fact, other than the fact of a prior conviction, which would increase the penalty for a crime beyond the prescribed statutory maximum. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455. As we noted previously, our Supreme Court has approved the use of special verdicts in criminal cases, citing cases dating back to 1849. *Blackwell*,

361 N.C. at 46-47, 638 S.E.2d at 456-57. Thus, the trial court had the authority to use a special verdict at the time of Defendant's trial, regardless of the passage of the *Blakely* Act. Therefore, Defendant was not improperly punished for an offense of which he was innocent on the alleged date of the crime. We conclude that Defendant was not subjected to an *ex post facto* law.

**[3]** Defendant next argues that the trial court erred by utilizing the following aggravator: that Defendant "knowingly created a risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." Defendant argues that the use of this aggravating factor (1) improperly duplicated an element of the offenses in violation of N.C. Gen. Stat. § 15A-1340.16 and (2) violated double jeopardy.

N.C. Gen. Stat. § 15A-1340.16(d) (2005) provides that "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation[.]" In *State v. Sellers*, 155 N.C. App. 51, 57, 574 S.E.2d 101, 105-06 (2002), the defendant argued that N.C.G.S. § 15A-1340.16(d) was violated because the State was required to prove that he used a firearm in order to prove the substantive offense with which he was charged and also the aggravating factor. This Court disagreed and stated

[i]n order to prove the substantive crimes, the State needed to prove use of the firearm, but did not need to prove that [the] defendant employed a weapon normally hazardous to the lives of more than one person as required for finding the aggravating factor. The State proved that [the] defendant utilized a semi-automatic pistol, which in its normal use is hazardous to the lives of more than one person and is the type of weapon contemplated by [this statute]. Therefore, we hold additional evidence was required from the State to prove the existence of this aggravating factor, beyond that required for the offenses themselves, and the trial court did not violate N.C. Gen. Stat. § 15A-1340.16(d) in finding this factor.

*Id.* (internal citations and quotation marks omitted).

In the present case, the jury was instructed that to convict Defendant of second-degree murder, it had to find that Defendant was driving a vehicle. Also, to convict Defendant of assault with a deadly weapon inflicting serious injury, the jury had to find that he had used a deadly weapon, his vehicle. However, to prove the aggravating fac-

tor, the State also had to prove (1) that Defendant knowingly created a great risk of death; and (2) that the vehicle would normally be hazardous to the lives of more than one person. *State v. Evans*, 120 N.C. App. 752, 758, 463 S.E.2d 830, 834 (1995), *cert. denied*, 343 N.C. 310, 471 S.E.2d 78 (1996). Therefore, the State was required to prove additional facts by additional evidence to prove the aggravating factor. We find no violation of N.C.G.S. § 15A-1340.16(d). Defendant's double jeopardy argument contains no citation to supporting authority, and therefore, we decline to address it. *See* N.C.R. App. P. 28(b)(6).

**[4]** Defendant next argues that the trial court committed plain error by failing to give any instruction to the jury on how to consider the aggravating factor. The trial court instructed the jury on the aggravating factor as follows:

> The burden is upon the State to prove the special issue beyond a reasonable doubt. So if the State has proven to you beyond a reasonable doubt that the defendant knowingly created a risk of death to more than one person by means of a weapon or device, which would normally be hazardous to the lives of more than one person, you will answer the special issue "yes." If you do not so find or have a reasonable doubt, you'll answer that issue "no."

Because Defendant failed to object to the instruction, we review this argument for plain error. N.C.R. App. P. 10(c)(4) ("In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error."). Our Supreme Court has stated

> [t]he plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. *State v. Odom*, 307 N.C. [655,] 661, 300 S.E.2d [375,] 378-79 [(1983)]. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. *State v. Black*, 308 N.C. [736,] 741, 303 S.E.2d [804,] 806-07 [(1983)].

*State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986).

As the State notes, the instruction given in the present case is quite similar, though not identical, to the instruction given to juries in

capital cases. See N.C.P.I.—Crim. 150.10 (2004). In the present case, the evidence against Defendant was overwhelming, and even if we assume that the instruction was erroneous, we cannot conclude that without it the jury would have reached a different verdict. We find Defendant has not shown plain error.

**[5]** . Lastly, Defendant argues that the trial court lacked jurisdiction to sentence Defendant because the jury did not find Defendant guilty of "aggravated second degree murder" or "aggravated assault with a deadly weapon inflicting serious injury." In the present case, the jury was instructed on all of the elements of each charge, and further instructed on the aggravating factor. The jury found each necessary element, as well as the aggravating factor used to increase Defendant's sentence, beyond a reasonable doubt. As we have concluded that the procedure used by the trial court was proper, and the instruction on the aggravating factor was sufficient, we find Defendant's argument to be without merit.

No error.

Judges BRYANT and STEELMAN concur.