STATE OF NORTH CAROLINA v. STANLEY MOORE

No. COA06-1671

(Filed 5 February 2008)

**1. Criminal Law— use of informants—issues not preserved—credibility for jury**

The trial court properly denied defendant's motions to dismiss cocaine charges arising from the use of informants based on improper delegation of authority and outrageous government conduct. Defendant did not preserve for appellate review constitutional issues or the question of entrapment, and the credibility of the informants was an issue for the jury.

**2. Drugs— dwelling for keeping and using—use of dwelling as residence—sufficiency of evidence**

There was sufficient evidence of maintaining a dwelling for keeping and selling cocaine where defendant used, treated, and

perceived the dwelling he shared with his fiancée as his residence, and not merely as a place he occupied from time to time.

**3. Sentencing— prior offenses—out-of-state—stipulations not effective—issue of law**

Stipulations to questions of law are generally not binding on the courts. Defendant's stipulation here to out-of-state prior convictions was not effective, the State failed to present evidence that defendant's prior Ohio offenses were substantially similar to North Carolina offenses, and the case was remanded for resentencing.

**4. Sentencing— offense committed while on probation and pretrial release—legislative argument**

There is no statutory support for defendant's argument that his rights were violated by increasing his prior record level and aggravating his sentence based on his being on probation and pretrial release when these offenses were committed. Further argument should be addressed to the General Assembly. N.C.G.S. § 15A-1340.14(b)(7); N.C.G.S. § 15A-1340.16(d)(12).

**5. Appeal and Error— prior opinion of Court of Appeals— binding on subsequent panel**

Subsequent panels of the Court of Appeals are bound by prior Court of Appeals decisions if not overturned by higher authority, and defendant's preservation assignments of error concerning aggravated sentencing were overruled.

Judge HUNTER concurring.

Appeal by defendant from judgments entered 13 April 2006 and 17 April 2006 by Judge James U. Downs in Transylvania County Superior Court. Heard in the Court of Appeals 9 October 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Barry H. Bloch, for the State.*

*Anne Bleyman, for defendant-appellant.*

JACKSON, Judge.

Stanley Moore ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of two counts of possession of cocaine with the intent to sell or deliver, one count of misdemeanor maintaining and keeping a dwelling for the keeping and selling of

cocaine, and one count of sale and delivery of cocaine. For the following reasons, we hold no error in defendant's trial but remand the case for resentencing.

Detective Charles A. Hutcheson, Jr. ("Detective Hutcheson") of the Brevard Police Department and Officer Robert Shuler ("Officer Shuler") of the Transylvania County Sheriff's Office worked together as part of the Transylvania County Narcotics Task Force ("the Task Force"). Among other drug interdiction and investigatory tactics, members of the Task Force commonly employ the services of paid informants to purchase narcotics and identify drug dealers. Two such informants were Thomas Lamar Wynne ("Wynne") and Mary Ann Ferguson ("Ferguson").

On 1 March 2005, Wynne and his wife met with Detective Hutcheson and Officer Shuler. Detective Hutcheson searched Wynne, Wynne's wife, and their vehicle for drugs, finding none. The officers taped a digital recording device to Wynne's chest and wired Wynne's vehicle with a transmitting device. Detective Hutcheson gave Wynne $60.00 to use for the purchase of crack cocaine. At trial, Detective Hutcheson testified that when he provided informants, such as Wynne, with currency to use in controlled purchases, he would either photocopy the currency or write down the serial numbers. After Detective Hutcheson provided Wynne with the $60.00, Wynne and his wife departed, and Detective Hutcheson and Officer Shuler observed Wynne's vehicle turn onto Loeb Drive. At trial, Wynne testified that (1) he knocked on the door of 109 Loeb Drive, where defendant's fiancée, Wanda Robinson ("Robinson"), rented a house; (2) defendant answered and told Wynne to enter; (3) Wynne stated to defendant, "[L]et me get a 60"; and (4) defendant gave Wynne three rocks in exchange for the $60.00 provided by Detective Hutcheson. Following the transaction, Wynne gave Detective Hutcheson three rocks, stating that he had purchased the crack from defendant. Detective Hutcheson again searched Wynne and Wynne's vehicle, but found no other drugs.

On 8 March 2005, Wynne and his wife again met with Detective Hutcheson, who this time was accompanied by North Carolina Alcohol Law Enforcement Officer Webb Corthell ("Officer Corthell"). Detective Hutcheson searched Wynne and his vehicle for drugs, finding none. Officer Corthell wired Wynne with a digital recording device, and Detective Hutcheson wired Wynne's vehicle with a transmitting device. Detective Hutcheson provided Wynne with another $60.00 to purchase crack cocaine, and Wynne and his wife drove

to 109 Loeb Drive. When Wynne arrived, he encountered defendant working on an automobile in the driveway approximately fifty feet from the house. Wynne testified that he did not enter the house during this visit. Because it was getting dark outside, defendant asked Wynne to retrieve a flashlight, which Wynne obtained from his aunt across the street. Defendant testified, "[T]hat's the only time I said anything to [Wynne] and other than that, I had my head in that car . . . ." Wynne testified that after retrieving a flashlight, he told defendant that he "need[ed] a little" and that he was "in a rush." Wynne further testified that he asked defendant for "a 60" and that defendant provided "three rocks" in exchange for the $60.00. Defendant denied hearing Wynne ask for drugs. After the transaction, Wynne gave Detective Hutcheson three rocks. Detective Hutcheson again searched Wynne and Wynne's vehicle, but found no other drugs.

On 19 March 2005, defendant was arrested. The police never executed a search warrant on 109 Loeb Drive to determine if defendant possessed the currency provided to Wynne by Detective Hutcheson, and Detective Hutcheson acknowledged at trial that the specific dollar bills provided to Wynne were not recovered. On 22 March 2005, defendant posted bond and was released from pre-trial custody.

Meanwhile, Ferguson informed Detective Hutcheson that she likely could purchase drugs from defendant as well as individuals at the residence of Kenny Townsend ("Townsend") on Silversteen Road. On 14 June 2005, Ferguson met with Officer Shuler and Detective Tony Owen ("Detective Owen") of the Brevard Police Department. Detective Owen searched Ferguson for drugs, finding none, and Officer Shuler wired her with a digital recording device. Detective Owen provided Ferguson with $40.00 with which to purchase crack cocaine. Detective Owen and Officer Shuler then drove Ferguson to a restaurant within approximately 250 yards of Townsend's residence and watched as she walked toward Silversteen Road. When Ferguson knocked on the downstairs door of Townsend's residence, defendant answered. Ferguson was not expecting to see defendant there. Ferguson testified,

> I said is Kenny [Townsend] around and he [defendant] said no, what you need, something to that effect. And I says anything going on, and he said what you want? And I said I got 40. And he said . . . step inside [and] . . . close the door. When I closed the door it became very dark in that room, but I watched him walk

back to the back left corner of that room, messed around there a little bit, he came back up to me, and there was a table right beside the door.

He was at the table a minute, and I went to offer him the $40, and he just kind of stepped back. And I said oh, you want me to lay it down. I thought maybe he just, you know, felt a little weird about taking the money. When I laid it down, I cracked the door open, there were two rocks of crack cocaine laying on the table. They hadn't been there before. He brought them up and laid them down there.

I picked up the crack and I said thanks, and he picked up . . . the money.

Defendant denied selling crack cocaine to Ferguson and testified that he was at Townsend's residence to borrow tools. After the transaction, Ferguson gave the crack cocaine to Detective Owen, and the officers searched Ferguson for other drugs, finding none.

On 7 February 2006, defendant was indicted for two counts of possessing cocaine with the intent to sell or deliver, one count of possessing a Schedule II controlled substance with the intent to sell or deliver, one count of maintaining a place to keep controlled substances, and two counts of selling or delivering a Schedule II controlled substance. On 13 April 2006, a jury found defendant (1) not guilty of one count of selling or delivering a Schedule II controlled substance, (2) not guilty of one count of possessing cocaine with the intent to sell or deliver, and (3) guilty of all remaining charges. After making findings on aggravating and mitigating factors, the trial court sentenced defendant as a prior record level III offender to the following consecutive terms of imprisonment: (1) two terms of twelve to fifteen months; (2) one term of twenty to twenty-four months; and (3) one term of 120 days. Defendant gave timely notice of appeal.

[1] On appeal, defendant first argues that the trial court erred in denying his motions to dismiss on the grounds of improper delegation of authority and outrageous government conduct. Specifically, defendant contends that the Task Force's practice of paying informants, such as Wynne and Ferguson, for each controlled purchase of drugs constituted an improper delegation of law enforcement duties and "the very sort of unfair, improper, extreme, unjustifiable or outrageous government conduct the courts must protect its citizens against." We disagree.

**STATE v. MOORE**

[188 N.C. App. 416 (2008)]

It is well-established that

[t]he standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.

*State v. Wood*, 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005) (internal quotation marks and citations omitted). "The trial court's conclusions of law, however, are reviewable *de novo.*" *State v. Hyatt*, 355 N.C. 642, 653, 566 S.E.2d 61, 69 (2002), *cert. denied*, 537 U.S. 1133, 154 L. Ed. 2d 823 (2003).

Preliminarily, we note that defendant's arguments with respect to both delegation of law enforcement authority and outrageous government conduct are constitutional issues. *See, e.g., Yakus v. United States*, 321 U.S. 414, 424, 88 L. Ed. 834, 848 (1944) (indicating that delegation of governmental power to private individuals may violate due process); *United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989) (describing the outrageous government conduct defense in terms of due process). Defendant, however, made no constitutional argument at trial and, therefore, failed to preserve such an argument for appellate review. *See State v. Roache*, 358 N.C. 243, 291, 595 S.E.2d 381, 412 (2004).

Additionally, defendant argues in his brief, quoting *Velarde-Villarreal v. United States*, 354 F.2d 9, 13 (9th Cir. 1965), that "an eager informer is exposed to temptations to produce as many accuseds as possible at the risk of trapping not merely an unwary criminal but sometimes an unwary·innocent as well." The issue of entrapment was not raised before the trial court. Therefore, we decline to review this on appeal. *See* N.C. R. App. P. 10(b)(1) (2006).

In his brief, defendant contends that "the Task Force's regular policy of paying drug addicts $100 per drug buy without careful management of those eager informers poses a clear danger." However, "paying informants to assist the government in uncovering criminal

conduct" is a "long-standing practice," *United States v. Anty*, 203 F.3d 305, 310-11 (4th Cir.), *cert. denied*, 531 U.S. 853, 148 L. Ed. 2d 84 (2000), and "it is sometimes necessary to compensate an informant before the informer will agree to undertake the often dangerous task of undercover investigation." *Reese v. State*, 877 S.W.2d 328, 332 (Tex. Crim. App. 1994). Although defendant quotes from a Ninth Circuit Court of Appeals decision that "[a] prosecutor who does not appreciate the perils of using rewarded criminals as witnesses risks compromising the truth-seeking mission of our criminal justice system," *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993), that same court ultimately

> decided on balance not to prohibit, as some have suggested, the practice of rewarding self-confessed criminals for their cooperation, or to outlaw the testimony in court of those who receive something in return for their testimony. Instead, we have chosen to rely on (1) the integrity of government agents and prosecutors not to introduce untrustworthy evidence into the system; (2) trial judges and stringent discovery rules to subject the process to close scrutiny; (3) defense counsel to test such evidence with vigorous cross examination; and (4) the wisdom of a properly instructed jury whose duty it is to assess each witness's credibility and not to convict unless persuaded beyond a reasonable doubt of the accused's guilt.

*Id.* at 335 (internal citations omitted).

In *State v. Brice*, 167 N.C. App. 72, 604 S.E.2d 356 (2004), this Court agreed with the Ninth Circuit's characterization of the issue as a credibility determination for the jury and not a decision for a trial court on a motion to dismiss. *Brice*, 167 N.C. App. at 77, 604 S.E.2d at 359 ("Our Supreme Court has stated that it is a 'long-standing principle in our jurisprudence . . . that it is the province of the jury, not the court, to assess and determine witness credibility.'" (omission in original) (quoting *Hyatt*, 355 N.C. at 666, 566 S.E.2d at 77)). Although defendant attempts to distinguish *Brice* on the basis that the payments to the informant in *Brice* "were not made to secure either her cooperation in defendant's arrest or her testimony at trial," *id.* at 77, 604 S.E.2d at 360, the record belies defendant's assertion. Detective Hutcheson testified: "We typically pay $100 per purchase that we document and that we feel like is a credible case to present to the court." There is no evidence here, however, that payments to Wynne and Ferguson were contingent upon arrests, testimony, convictions, or

any other factor. Their credibility was an issue for the jury, and the trial court properly denied defendant's motions to dismiss. Accordingly, defendant's assignment of error is overruled.

[2] Defendant next contends that the trial court erred in denying his motions to dismiss and submitting to the jury the charge of maintaining and keeping a dwelling for the purpose of keeping and selling cocaine.

Pursuant to North Carolina General Statutes, section 90-108(a)(7), it is illegal "[t]o knowingly keep or maintain any . . . dwelling house . . . which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such substances, or which is used for the keeping or selling of the same in violation of this Article." N.C. Gen. Stat. § 90-108(a)(7) (2005). Violation of this provision constitutes a misdemeanor, but "if the criminal pleading alleges that the violation was committed intentionally, and upon trial it is specifically found that the violation was committed intentionally, such violations shall be a Class I felony." N.C. Gen. Stat. § 90-108(b) (2005). " 'Knowingly' means a person is aware of a high probability of a given activity's existence, whereas a person acts intentionally if he or she desires to cause the consequences of his or her act or that he or she believes the consequences are substantially certain to result." *State v. Hart*, 179 N.C. App. 30, 43, 633 S.E.2d 102, 110 (2006) (internal quotation marks, alterations, and citations omitted), *rev'd in part on other grounds*, 361 N.C. 309, 644 S.E.2d 201 (2007). In the case *sub judice*, defendant was indicted for felonious keeping or maintaining a dwelling for the purpose of keeping or selling a controlled substance, and the jury found defendant guilty of a misdemeanor pursuant to section 90-108(a)(7).

Defendant first argues that there was insufficient evidence that he kept or maintained the house at 109 Loeb Drive—the location of the 1 March 2005 transaction. This argument is without merit.

As this Court has held, to "[m]aintain means to 'bear the expense of; carry on . . . hold or keep in an existing state or condition.' " *State v. Allen*, 102 N.C. App. 598, 608, 403 S.E.2d 907, 913 (1991) (omission in original) (quoting *Black's Law Dictionary* 859 (5th ed. 1979)), *rev'd on other grounds*, 332 N.C. 123, 418 S.E.2d 225 (1992). Whether a defendant "keeps or maintains" a dwelling requires the consideration of several factors, including, but not limited to, "ownership of the property; occupancy of the property; repairs to the property; payment of taxes; payment of utility expenses; payment of

repair expenses; and payment of rent." *State v. Bowens*, 140 N.C. App. 217, 221, 535 S.E.2d 870, 873 (2000), *disc. rev. denied*, 353 N.C. 383, 547 S.E.2d 417 (2001).

Here, the evidence tended to show that defendant (1) resided with his children and Robinson in the house at 109 Loeb Drive; (2) watched the children while Robinson worked in the evenings; and (3) contributed money toward household expenses when he had the ability. Additionally, defendant consistently described 109 Loeb Drive as his home and his property, and he noted that he earned income by repairing automobiles "at home, in my yard, and my driveway." Although defendant stated that there were times when he did not live with Robinson at 109 Loeb Drive, defendant clarified that these instances were the result of "little quarrels" between defendant and Robinson and that during these isolated instances, he lived in the shed behind the house. Defendant also explained that he kept various personal belonging in the shed, including his scooter, clothes, and tools. Finally, Robinson testified that defendant had two children with another woman and that those children would spend weekends with defendant and Robinson at 109 Loeb Drive. Although defendant contends that the State failed to present substantial evidence that he kept or maintained a dwelling at 109 Loeb Drive, the evidence shows that defendant used, treated, and perceived the dwelling as his residence and not merely as a place he "occupied . . . from time to time." *State v. Harris*, 157 N.C. App. 647, 652, 580 S.E.2d 63, 66 (2003).

Defendant further contends that even if the evidence showed that he kept and maintained the dwelling, the evidence failed to demonstrate that he kept and maintained the dwelling for the purpose of keeping and selling cocaine. *See State v. Carter*, 184 N.C. App. 706, 709 n.1, 646 S.E.2d 846, 849 (2007) (describing this as "the 'purpose' element" of section 90-108(a)(7)).

"The determination of whether a building or other place is used for keeping or selling a controlled substance 'will depend on the totality of the circumstances.' " *State v. Frazier*, 142 N.C. App. 361, 366, 542 S.E.2d 682, 686 (2001) (quoting *State v. Mitchell*, 336 N.C. 22, 34, 442 S.E.2d 24, 30 (1994)). Here, defendant testified that his neighborhood has "a high crime rate of drugs," and the evidence demonstrated that two separate drug transactions actually transpired at 109 Loeb Drive. This Court recently held that evidence that a defendant used the same vehicle for two separate drug transactions, both of which were observed and recorded by police, was sufficient to withstand a

motion to dismiss a charge brought pursuant to section 90-108(7). *See State v. Calvino*, 179 N.C. App. 219, 222-23, 632 S.E.2d 839, 842-43 (2006). Additionally, we note that to withstand a motion to dismiss, overwhelming evidence is not needed. " 'In "borderline" or close cases, our courts have consistently expressed a preference for submitting issues to the jury . . . .' " *State v. Jackson*, 103 N.C. App. 239, 244, 405 S.E.2d 354, 357 (1991) (omission in original) (quoting *State v. Hamilton*, 77 N.C. App. 506, 512, 335 S.E.2d 506, 510 (1985), *disc. rev. denied*, 315 N.C. 593, 341 S.E.2d 33 (1986)). Therefore, the trial court did not err in ruling that the totality of the circumstances demonstrate that the dwelling at 109 Loeb Drive was used for the purpose of keeping or selling drugs pursuant to section 90-108(a)(7). Accordingly, defendant's assignment of error is overruled.

**[3]** In his next argument, defendant contends that the trial court's determination of his prior record level was not supported by sufficient evidence. Specifically, defendant contends that although he stipulated to the prior record level worksheet submitted by the State, his stipulation was ineffective with respect to his prior out-of-state convictions. We agree.

"The State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists . . . ." N.C. Gen. Stat. § 15A-1340.14(f) (2005). A prior conviction may be proven by, *inter alia*, stipulation by the parties. *See id.* For purposes of determining a defendant's prior record level for felony sentencing,

> a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony . . . . If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

N.C. Gen. Stat. § 15A-1340.14(e) (2005).

In the case *sub judice*, defense counsel stipulated to sentencing defendant as a prior record level III offender. Defendant's prior record level worksheet included four Ohio convictions, with three classified as Class I felonies in North Carolina. The trial court, in turn, assigned four prior record level points for two of the Ohio convictions. This Court, however, has held

"that the question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of law to be resolved by the trial court[, and] . . . [s]tipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate."

*State v. Palmateer*, 179 N.C. App. 579, 581, 634 S.E.2d 592, 593 (2006) (first alteration added) (quoting *State v. Hanton*, 175 N.C. App. 250, 253, 623 S.E.2d 600, 603-04 (2006)). The State in *Palmateer* failed to prove, and the trial court failed to determine, that the out-of-state convictions were substantially similar to felony offenses under North Carolina statutes. Therefore, this Court remanded for resentencing, holding "that the stipulation in the worksheet regarding Defendant's out-of-state convictions was ineffective." *Id.* at 582, 634 S.E.2d at 594. Similarly, the State in the instant case failed to present evidence that the Ohio offenses were substantially similar to North Carolina offenses. *Compare State v. Rich*, 130 N.C. App. 113, 117, 502 S.E.2d 49, 52 (holding that "copies of [out-of-state] statutes, and comparison of their provisions to the criminal laws of North Carolina, were sufficient to prove by a preponderance of the evidence that the crimes of which defendant was convicted in those states were substantially similar to classified crimes in North Carolina."), *disc. rev. denied*, 349 N.C. 374, 516 S.E.2d 605 (1998). Accordingly, we must remand for resentencing.

**[4]** Defendant next contends that the trial court erred in using the fact that defendant was on probation and pre-trial release at the time he committed the instant offenses to both increase his prior record level and aggravate his sentence. We disagree.

As a preliminary matter, we note that although defendant failed to object on this ground at trial, defendant nevertheless may raise the issue on appeal, as the issue concerned whether his sentence was illegally imposed or was otherwise invalid as a matter of law, pursuant to North Carolina General Statutes, section 15A-1446(d)(18). *See* N.C. Gen. Stat. § 15A-1446(d)(18) (2005).

North Carolina General Statutes, section 15A-1340.14(b)(7) permits a trial court to assign one point for prior record level purposes when "the offense was committed while the offender was on supervised or unsupervised probation, parole, or post-release supervision." N.C. Gen. Stat. § 15A-1340.14(b)(7) (2005). Section 15A-1340.16(d), in turn, lists aggravating factors to be considered by the court, including

whether "[t]he defendant committed the offense while on pretrial release on another charge." N.C. Gen. Stat. § 15A-1340.16(d)(12) (2005). Although probationary status is not specifically included as an aggravating factor, section 15A-1340.16(d)(20) permits a trial court to aggravate a sentence based upon "[a]ny other aggravating factor reasonably related to the purposes of sentencing." N.C. Gen. Stat. § 15A-1340.16(d)(20) (2005).

Although defendant contends that using the same factors to increase his prior record level and aggravate his sentence violated "his state and federal rights,"[1] defendant has failed to point to any specific right, and instead, argues that such a procedure was "improper." The General Assembly has provided that (1) "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation," N.C. Gen. Stat. § 15A-1340.16(d) (2005); (2) "the same item of evidence shall not be used to prove more than one factor in aggravation," *id.*; and (3) "[i]n determining the prior record level, convictions used to establish a person's status as an habitual felon shall not be used." N.C. Gen. Stat. § 14-7.6 (2005). The General Assembly has not provided any similar statutory right supporting defendant's argument, and therefore, "any further argument by defendant should be addressed to the General Assembly." *State v. Bauberger*, 176 N.C. App. 465, 474, 626 S.E.2d 700, 707 (holding that there is no statutory provision prohibiting a trial court from using the same prior convictions both as evidence of malice during trial and to increase the defendant's prior record level), *aff'd*, 361 N.C. 105, 637 S.E.2d 536 (2006) (per curiam). Accordingly, defendant's assignment of error is overruled.

[5] Finally, defendant argues that the aggravated sentences imposed by the trial court were not authorized at the time they were entered and therefore violated the due process and *ex post facto* clauses. Defendant, however, concedes that his arguments fail under recent case law from this Court. *See State v. Heinricy*, 183 N.C. App. 585, 592, 645 S.E.2d 147, 152-53, *disc. rev. denied*, 362 N.C. 90, 656 S.E.2d 593 (2007); *State v. Borges*, 183 N.C. App. 240, 248-49, 644 S.E.2d 250, 253-55, *disc. rev. denied*, 361 N.C. 570, 650 S.E.2d 816 (2007), *cert. denied*, —— U.S. ——, 169 L. Ed. 2d 776 (2008) (07-7828); *State v. Johnson*, 181 N.C. App. 287, 291-93, 639 S.E.2d 78, 80-82, *disc. rev. denied*, 361 N.C. 364, 644 S.E.2d 555 (2007). Defendant explains that

---

1. To the extent defendant bases his argument on constitutional violations, such an argument is not properly before this Court. *See Roache*, 358 N.C. at 291, 595 S.E.2d at 412.

STATE v. MOORE

[188 N.C. App. 416 (2008)]

he has raised this issue for preservation purposes and also to urge this Court to "re-examine" its holdings in *Heinricy, Borges,* and *Johnson.* However, "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Appeal from Civil Penalty,* 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Accordingly, defendant's assignment of error is overruled.

Defendant's remaining assignments of error not set forth in his brief are deemed abandoned. *See* N.C. R. App. P. 28(b)(6) (2006).

No error as to trial; Remanded for resentencing.

Judge WYNN concurs.

Judge HUNTER concurs in a separate opinion.

HUNTER, Judge, concurring.

The majority relies heavily on the case *State v. Palmateer,* 179 N.C. App. 579, 634 S.E.2d 592 (2006), in its analysis of defendant's stipulations to out-of-state convictions. While I believe the majority's analysis is correct because we are bound by *Palmateer,*[2] I believe the analysis in *Palmateer* was incorrect and write separately to so note.

In *Palmateer,* the defendant and the State stipulated to the accuracy of the contents of the defendant's prior record level worksheet, which contained several of the defendant's "out-of-state convictions, the date of these convictions, and their classification"; the stipulation included " 'the classification and points assigned to any out-of-state convictions[.]' " *Palmateer,* 179 N.C. App. at 581, 634 S.E.2d at 593.

However, our Court recently held in *State v. Hanton* ["*Hanton* II"], 175 N.C. App. 250, 623 S.E.2d 600 (2006), that "the question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of law to be resolved by the trial court." Our Court further stated that " '[s]tipulations as to questions of law are generally held invalid and ineffective, and not binding upon the

---

2. *See In the Matter of Appeal from Civil Penalty,* 324 N.C. 373, 384, 379 S.E.2d 30, 36-37 (1989) ("where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court").

courts, either trial or appellate.' " Although this Court did not explicitly state that a defendant could not stipulate to the substantial similarity of out-of-state convictions, the Court did conclude that this Court's prior statement in *State v. Hanton*, 140 N.C. App. 679, 690, 540 S.E.2d 376, 383 (2000) ["*Hanton* I"], that a defendant might stipulate to this question, was "non-binding dicta." We are bound by prior decisions of a panel of this Court. Thus, we conclude that the stipulation in the worksheet regarding Defendant's out-of-state convictions was ineffective. Accordingly, we remand for resentencing.

*Palmateer*, 179 N.C. App. at 581-82, 634 S.E.2d at 593-94 (citations omitted).

In *Hanton* I, the defendant argued that his stipulation to his *guilt* of the out-of-state crimes on the prosecutor's sentencing worksheet did *not* include a stipulation that those crimes were *substantially similar* to certain felonies in this state. *Hanton* I, 140 N.C. App. at 690, 540 S.E.2d at 383. This Court held that, since no such stipulation was validly made by the defendant and the State had presented no evidence on the point, the record contained no evidence to support a conclusion that the crimes were substantially similar. *Id.* at 690-91, 540 S.E.2d at 383. In the defendant's next appeal, *Hanton* II, stipulations were no longer at issue; the defendant argued that the Court's statement in *Hanton* I that "a defendant might stipulate that out-of-state offenses are substantially similar to corresponding North Carolina felony offenses" proved that the question of substantial similarity was a question of fact, which must be submitted to the jury per *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). *See Hanton* I, 140 N.C. App. at 690, 540 S.E.2d at 383; *Hanton* II, 175 N.C. App. at 254, 623 S.E.2d at 603. It was in response to that argument that this Court held that the language in *Hanton* I was dicta and concluded that "the question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of law to be resolved by the trial court." *Id.* at 254-55, 623 S.E.2d at 603-04. Thus, *Blakely* did not apply. The Court also stated that " '[s]tipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts[.]' " *Id.* at 253, 623 S.E.2d at 603. However, nowhere in *Hanton* I or *Hanton* II did this Court suggest that the trial court must entirely disregard stipulations by a defendant to the similarity of his prior out-of-state convictions to offenses in North Carolina. While such admissions are not binding, the Court may certainly refer to them and take

the statements into account when resolving the question of law before it; indeed, a valid stipulation could standing alone provide a valid basis for the court's conclusion of law that certain offenses are substantially similar. The conclusion in *Palmateer* is that a defendant's stipulation to these facts must be considered ineffective, and thus any conclusion drawn by the trial court that takes into account those stipulations must be reversed. This misinterprets the holding of *Hanton* II to the extent that it forbids the trial court from taking into account any admissions by a defendant.

As *Palmateer* is binding on this Court, I concur.