STATE OF NORTH CAROLINA v. TERRY DUNCAN, HOWARD DUNCAN, AND DWIGHT LINDSEY

No. 8426SC936

(Filed 4 June 1985)

### 1. Criminal Law § 91.7— denial of continuance—absence of witness—no error

There was no abuse of discretion or denial of defendants' constitutional rights in denying their motion for a continuance to secure a witness in a prosecution for the sale and delivery of cocaine and trafficking in cocaine. The indictments had been pending since April of 1983, the motions were made on 7 February 1984, the witness's identity had been known to counsel during a previous trial involving other charges, the witness had been subpoenaed and had appeared when the cases had been set but not reached in December of 1983, and the witness could only have corroborated other testimony had she appeared. The circumstances which defendants contended the witness would have presented in support of entrapment were placed before the jury, defendants' counsel were notified a week in advance of the trial date, and one defendant's counsel issued a subpoena for the witness on 31 January. There was no indication that counsel had maintained any contact with the witness between her December appearance and the issuance of the subpoena, that the witness could have been located had the continuance been granted, and one defense counsel stated later in the trial that he was not sure what the witness would say when they found her.

### 2. Criminal Law §§ 87.3, 73.1— cross-examination of the S.B.I. agent limited—investigative notes examined in camera—no error

The court did not improperly limit the cross-examination of an undercover S.B.I. agent in a prosecution for the sale and delivery of cocaine and for trafficking in cocaine where defendants did not assert their constitutional claims in the trial court as a basis for examining the agent's investigative report and notes, the court conducted an *in camera* inspection of the notes and investigative report and supplied counsel with the requested information, and an excluded question concerning the relationship between one of the defendants and his girl friend called for hearsay and the same information was subsequently admitted.

### 3. Narcotics § 4.2— sale and delivery of cocaine—no entrapment as a matter of law

There was no error in denying a defendant's motion to dismiss charges of sale and delivery of cocaine and trafficking in cocaine based on entrapment where the State offered evidence that defendant readily agreed to obtain cocaine for an undercover S.B.I. agent when requested to do so by his girl friend, that the agent purchased cocaine from him or with his assistance on four occasions, and that the girl friend had no part in the subsequent transactions. Although defendant's contrasting testimony concerning the agent's repeated requests for him to obtain drugs for her, his hopes of a romantic relationship with her, his lack of financial gain from the transactions, and his lack of

knowledge about selling drugs may have been sufficient to raise the issue of inducement, it did not compel a conclusion of entrapment as a matter of law. The issue was submitted to and rejected by the jury.

**4. Narcotics § 4— sale and delivery of cocaine—evidence sufficient**

The motions of defendants Howard Duncan and Lindsey to dismiss charges of sale and delivery of cocaine and trafficking in cocaine for insufficient evidence were properly denied where Howard Duncan was present at a location where the sale of a substantial quantity of cocaine had been arranged by his brother, had expressed concern that an undercover S.B.I. agent might be an officer and that three ounces of cocaine was a lot to buy, was present in a motel room when the agent examined the white powder, and assisted his brother in counting the money paid by the agent. Lindsey had rented the motel room where cocaine was hidden, occupied the room until the agent and one of the other defendants arrived to complete the purchase, left the room only when the agent refused to go to the room and deal with the other defendant's "worker," and was the driver of a car where a white powder residue was found which was from the same source as the purchased cocaine.

APPEALS by defendants from *Davis, James C., Judge*. Judgments entered 9 February 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 1 April 1985.

Terry Duncan, his brother Howard Duncan and Dwight Lindsey were each charged, in separate bills of indictment, with the felonies of sale and delivery of cocaine and trafficking in cocaine by possession of more than 28 grams but less than 200 grams of cocaine. The offenses were alleged to have occurred on 18 March 1983. The jury returned verdicts of guilty as to each charge against each defendant. All defendants appealed from judgments imposing active prison sentences.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Daniel C. Higgins, for the State.*

*Ferguson, Watt, Wallace and Adkins, P.A., by James E. Ferguson, II, for defendant appellants.*

MARTIN, Judge.

Defendants bring forward assignments of error relating to the denial of their motion for a continuance, evidentiary rulings made during their cross-examination of the undercover agent, and denial of their motions to dismiss. We have considered each of these assignments and conclude that no prejudicial error occurred at their trial.

The State's evidence tended to show that Officer W. H. Cald-well of the Charlotte Police Department Vice and Narcotics Division began an investigation of Terry Duncan relative to controlled substance violations in October 1982. In the course of the investigation, he requested the State Bureau of Investigation to assign a female undercover officer to assist him. Agent Deidra H. Bowman was assigned. Caldwell then made arrangements with Teresa Robinson, Terry Duncan's girl friend, to introduce Agent Bowman to Terry Duncan and to assist her in purchasing drugs from him. Robinson was not aware that either Caldwell or Bowman were law enforcement officers.

On 30 December 1982, Robinson introduced Agent Bowman to Terry Duncan. Between 30 December 1982 and 14 March 1983, Bowman made at least three drug purchases from him. On 14 March 1983, Bowman advised Terry Duncan that she "had a man" who had $5,000 to $6,000 and she inquired as to the quantity of cocaine she could purchase for that amount of money. Terry Duncan advised her that she could buy approximately three ounces. They agreed that the transaction would occur on 17 March 1983. On 17 March when Bowman contacted Terry Duncan, she was instructed to call him again on 18 March.

On 18 March, Bowman called Terry Duncan and then went to his bail-bond office at approximately 1:30 p.m. She observed Dwight Lindsey outside the office working on a green Chevrolet automobile. Terry Duncan told Bowman that he had not had time to "cut" the three ounces of cocaine out of a larger quantity which he had received. Terry Duncan went over to Dwight Lindsey and obtained a "beeper" paging device, gave it to Bowman, and told her that he would contact her later. Bowman left the office, and shortly thereafter, surveillance officers observed Dwight Lindsey drive away in the green Chevrolet. At approximately 5:25 p.m., Terry Duncan contacted Agent Bowman by the "beeper" and provided her with a telephone number. When she called the number, Terry Duncan told her that he was "ready to deal" and instructed her to come to the Best Western Motel on Independence Boulevard in Charlotte. When Bowman arrived at the motel parking lot, Terry Duncan got into her car and expressed concern that she might be a police officer. He told her to drive to an adjacent motel, the Coliseum Inn, and accompanied her. In the parking lot of the Coliseum Inn, Terry Duncan told Bowman to go to Room

379 and knock on the door, that his "worker" was inside the room and would handle the transaction. At about that time, Howard Duncan came to the automobile and also expressed his concern that Bowman might be a police officer and that they could get in a lot of trouble for selling three ounces of cocaine.

When Agent Bowman objected to entering the motel room alone, Terry Duncan got out of the car and went to Room 379. As he entered the room, Dwight Lindsey came out and stood in the parking lot. Bowman then entered the room. At Terry Duncan's instruction, Bowman reached above a mirror and removed a plastic bag. Inside the bag was another plastic bag containing white powder. She handed the bags to Terry Duncan, who removed the outer bag and returned the bag containing the white powder to Bowman so that she could weigh it. Howard Duncan then entered the room. Bowman weighed the powder and then went outside to her automobile to get the money. When she returned she handed the money to Terry Duncan, who counted it. After he had counted the money, Howard Duncan counted it. At that point, police officers entered the room and arrested both the Duncans. Dwight Lindsey was arrested in the parking lot of the motel.

The green Chevrolet which had earlier been driven by Lindsey was parked in the motel parking lot. A search warrant was obtained for the Chevrolet, and officers found a plastic bag containing white powder residue in the bag. An SBI chemist testified that the white powder which Agent Bowman obtained from Terry Duncan contained cocaine and weighed 83.70 grams. The white powder residue found in the Chevrolet was also analyzed as containing cocaine and as having come from the same source as the 83.70 grams of powder purchased by Bowman. Motel records indicated that Dwight Lindsey had rented Room 379 at the Coliseum Inn earlier on 18 March 1983.

Neither Dwight Lindsey nor Howard Duncan offered evidence. Terry Duncan testified that Teresa Robinson had introduced Agent Bowman to him as "Dee," a friend from Kannapolis, and had told him that Dee wanted to buy some cocaine for her boyfriend. Terry Duncan made a telephone call and then accompanied Robinson and Bowman to a house where he purchased cocaine for Bowman. Thereafter, Bowman called him repeatedly and came to his office asking that he obtain cocaine for her. He made

arrangements for her to purchase cocaine from other people on a couple of occasions, but made no money out of the transactions. He asked Bowman to go out with him several times; she declined but "kind of assured" him that she would "get together" with him. He testified that he had never sold cocaine to anyone, and that he arranged to get cocaine for Bowman only because Teresa Robinson and Agent Bowman asked him to do so.

Terry Duncan also testified that on 18 March 1983, Willie Caldwell owned the cocaine, had transported it to the motel, had put it in Room 379, and was supposed to deal with Bowman, but that she refused to deal with anyone but Terry Duncan. Therefore, he went into the room with her as an accommodation to her, and that Willie Caldwell was supposed to come to the room to pick up the money. He testified that neither Howard Duncan nor Dwight Lindsey knew anything about the drugs and that Bowman had suggested that the room be rented in Dwight Lindsey's name because Terry Duncan was married and because Bowman said that she had a jealous boyfriend and was afraid that she and Terry Duncan would be caught in the motel room together.

[1] Defendants contend that the trial court abused its discretion and violated their constitutional rights to confrontation, effective assistance of counsel and due process by denying their motion for a continuance. The cases were set for trial at the 6 February 1984 criminal session of Superior Court and were reached on Tuesday, 7 February. At that time, trial counsel for Terry Duncan made an oral motion for continuance on the grounds that a subpoena, which he had issued on 31 January 1984 to secure the presence of Teresa Robinson as a defense witness, had not been served. He contended, in support of the motion, that Teresa Robinson was an essential defense witness because she would testify that she had been recruited by Officer Caldwell to introduce Agent Bowman to Terry Duncan and the circumstances surrounding the introduction, and that she had never previously purchased any drugs from Terry Duncan. Through this testimony, he contended that he would establish that Terry Duncan had been entrapped. Trial counsel for Howard Duncan and Dwight Lindsey joined in the motion. Other than the statements of counsel, defendants presented no evidence, by affidavit or otherwise, in support of the motion.

Motions for continuance are ordinarily addressed to the sound discretion of the trial court; the court's ruling will not be disturbed on appeal absent a showing of an abuse of such discretion. *State v. Weimer*, 300 N.C. 642, 268 S.E. 2d 216 (1980). However, if a motion for continuance is based on a right guaranteed by the federal or state constitutions, the question is one of law, reviewable on appeal in the light of the circumstances of each case. *State v. Branch*, 306 N.C. 101, 291 S.E. 2d 653 (1982). In order to justify a new trial, a defendant must show (1) that the denial was erroneous, and (2) that he was prejudiced thereby. *State v. Searles*, 304 N.C. 149, 282 S.E. 2d 430 (1981).

Due process requires that defendant be allowed a reasonable time and opportunity to produce competent evidence in his defense and to confront his accusers with other evidence. *State v. Baldwin*, 276 N.C. 690, 174 S.E. 2d 526 (1970). The right to assistance of counsel includes the right of counsel to confer with witnesses, to consult with the accused and to prepare his defense. *State v. Cradle*, 281 N.C. 198, 188 S.E. 2d 296, *cert. denied*, 409 U.S. 1047, 34 L.Ed. 2d 499, 93 S.Ct. 537 (1972).

Applying the foregoing standards to the circumstances of this case, we conclude that defendants have demonstrated no prejudice, and thus no violation of their constitutional rights, resulting from the court's denial of their motion for continuance. The indictments in these cases had been pending since April 1983 and Teresa Robinson's identity had become known to counsel during the course of a previous trial involving other charges against Terry Duncan. When the instant cases had been set, but not reached, at a previous session of court in December 1983, Robinson had been subpoenaed and had appeared. These facts disclose that counsel had ample opportunity to confer with defendants, to learn the identity of possible witnesses, including Robinson, and to confer with those witnesses.

Furthermore, assuming that Robinson, had she appeared, would have provided the testimony forecast by counsel, it appears that she could only have corroborated other testimony which was actually presented at the trial. Officer Caldwell testified, on cross-examination, that neither he nor any other Charlotte police officers had purchased controlled substances from Terry Duncan prior to the purchases by Agent Bowman, and that Terry Duncan

had never before been arrested for selling drugs or for any other offense. He requested Agent Bowman's assistance because he was of the opinion that Terry Duncan could be more easily approached by a female; he introduced Agent Bowman to Teresa Robinson as "Dee" and asked Robinson to help Dee buy drugs from Terry Duncan. Agent Bowman testified, on cross-examination, as to the circumstances surrounding her introduction to Robinson, and Robinson's introduction of her to Terry Duncan. Terry Duncan testified about his relationship with Robinson and the circumstances of his meeting Agent Bowman. Through the testimony of Terry Duncan, and the cross-examination of Officer Caldwell and Agent Bowman, all of the circumstances which counsel contended Robinson would present in support of the entrapment defense were placed before the jury. The court's refusal to continue the trial due to the absence of Robinson did not violate the defendants' constitutional rights.

The defendants have also failed to show that the court abused its discretion in denying the motion for continuance. Defendants' counsel were notified of the 6 February 1984 trial setting at least a week in advance of that date as is evidenced by the fact that Terry Duncan's counsel issued the subpoena for Robinson on 31 January. There is no indication that counsel had maintained any contact with her during the interim between her December appearance and the issuance of the subpoena, or that she could have been located had counsel been given additional notice of the trial or had the continuance been granted. Indeed, the record indicates that Robinson could not be located even after the trial judge personally called authorities and requested additional efforts at locating her, supplying information furnished by counsel as to her residence and place of employment. Finally, the record reflects that at a later point in the trial, Terry Duncan's counsel stated with respect to Robinson's testimony, "I really can't tell you what she's going to say when we get her . . . ." Under these facts, the court did not abuse its discretion by proceeding with the trial.

[2]  Defendants contend that the court improperly limited their cross-examination of Agent Bowman and erred in refusing their requests to examine an investigative report and notes which Agent Bowman had used to refresh her recollection before testifying. They assert a violation of their Sixth Amendment rights to

confrontation and cross-examination. We find no merit in these contentions.

Initially, we note that defendants did not assert their constitutional claims in the trial court as a basis for examining the investigative report and notes, or with respect to the court's rulings in connection with the cross-examination of Agent Bowman by Terry Duncan's counsel. In order for an appellant to assert a constitutional right in an appellate court, the right must have been asserted and the issue raised before the trial court. *State v. Robertson*, 57 N.C. App. 294, 291 S.E. 2d 302, *disc. rev. denied*, 305 N.C. 763, 292 S.E. 2d 16 (1982).

On cross-examination of Agent Bowman, Terry Duncan's counsel established that Bowman and Teresa Robinson had discussed Robinson's relationship with Terry Duncan. Counsel then inquired, "What did she tell you about her relationship with Mr. Duncan?" The district attorney's objection was sustained, and the defendants take exception and assign error to the ruling. The court's ruling was correct; any response would have been inadmissible as hearsay as it could only have been offered to prove the nature of the relationship between Robinson and Terry Duncan. *See* Brandis, *North Carolina Evidence* § 138 (2d Rev. Ed. 1982). However, even assuming that the question was proper, defendants could not have been prejudiced by exclusion of the answer because Terry Duncan's counsel was subsequently permitted to inquire of Agent Bowman as to what Robinson had told her with respect to various aspects of the relationship.

At another point during the cross-examination of Agent Bowman by Terry Duncan's counsel, she was questioned concerning the number of police officers assigned to conduct surveillance of her 18 March contact with Terry Duncan. Agent Bowman referred to her notes and provided the answer. At that point, no request was made by counsel to examine the notes. Subsequently, during cross-examination by counsel for Howard Duncan and Dwight Lindsey, Agent Bowman admitted that she had used her notes and an investigative report to refresh her recollection before testifying. Counsel then requested to examine the notes and report and the request was denied by the court. However, after the request was renewed during the testimony of Officer Caldwell, the court conducted an *in camera* inspection of the

notes and report and supplied counsel with the information which he had requested. No further requests for access to the notes and report were made by either counsel. It is apparent from the record that this assignment of error has no merit.

[3]  Terry Duncan contends that the evidence established, as a matter of law, that he was entrapped by Agent Bowman. He assigns as error the court's denial of his motion to dismiss the charges.

Entrapment is "the inducement of one to commit a crime not contemplated by him, for the mere purpose of instituting a criminal prosecution against him." *State v. Stanley*, 288 N.C. 19, 27, 215 S.E. 2d 589, 594 (1975).

> The defense of entrapment consists of two elements: (1) acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime, (2) when the criminal design originated in the minds of the government officials, rather than with the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities. [Citations omitted.]

*State v. Walker*, 295 N.C. 510, 513, 246 S.E. 2d 748, 749-50 (1978). Thus, activity on the part of law enforcement officers which brings about the commission of a crime by a defendant as a result of persuasion of the officers is entrapment; merely affording the opportunity for the commission of a crime is not entrapment. *Id.* Ordinarily, if the evidence raises the issue of entrapment, it is a question for resolution by the jury; the court can find entrapment as a matter of law only "where the undisputed testimony and required inferences compel a finding" that defendant was induced by the officers to commit an act which he was not predisposed to commit. *State v. Stanley, supra* at 32, 215 S.E. 2d at 597.

The evidence offered by the State against Terry Duncan tended to show that Terry Duncan, on 30 December 1983, readily agreed to obtain cocaine for Agent Bowman when requested to do so by Teresa Robinson. Thereafter, Bowman purchased cocaine from Terry Duncan, or with his assistance, on four occasions including 18 March. Teresa Robinson had no part in these subsequent transactions. Although each of these transactions was initiated by a request for cocaine by Agent Bowman, the jury

could reasonably infer that these solicitations provided no more than an opportunity for Terry Duncan to commit offenses to which he was predisposed. "Predisposition may be shown by a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant an opportunity to commit the crime." *State v. Hageman*, 307 N.C. 1, 31, 296 S.E. 2d 433, 450 (1982). Terry Duncan's contrasting testimony concerning Agent Bowman's repeated requests for him to obtain drugs for her, his hopes for a romantic relationship with her, his lack of financial gain from the transactions and his lack of knowledge about selling drugs may have been sufficient to raise the issues of inducement, and lack of predisposition, to commit the offenses, but fell short of compelling a conclusion of entrapment as a matter of law. The issue of entrapment was submitted to, and rejected by the jury. The court did not err in denying Terry Duncan's motion for dismissal of the charges.

[4] Defendants Howard Duncan and Dwight Lindsey assign as error the denial of their motions to dismiss for insufficiency of the evidence. We reject these assignments and hold that there was sufficient evidence to support each conviction.

A motion to dismiss in a criminal case requires that the evidence be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). Contradictions and discrepancies in the evidence are for resolution by the jury and do not warrant dismissal. *Id.* If there is substantial evidence, whether direct, circumstantial, or both, of a defendant's guilt, dismissal should be denied. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975).

The State produced evidence that on 18 March 1983 Howard Duncan was present at the location where a sale of a substantial quantity of cocaine had been arranged by his brother. Before the transaction occurred, Howard Duncan expressed concern that Agent Bowman might be an undercover officer and that "three ounces of cocaine was a lot to buy." These statements provide strong circumstantial evidence that Howard Duncan was aware of the nature of the transaction and its attendant risk. There was also evidence of his direct involvement in the sale. He was pres-

ent in the motel room when Agent Bowman examined the white powder. When she went outside to get the money from her car, he remarked to her that she was "smart" to have left the money in the trunk of the car. He assisted Terry Duncan in counting the money. The evidence was sufficiently substantial to permit a reasonable inference that Howard Duncan participated in the possession, sale and delivery of the cocaine and his motion to dismiss was properly denied.

As to Dwight Lindsey, the State produced evidence that he rented the motel room where the transaction occurred, and occupied the room where the cocaine was hidden until Terry Duncan and Agent Bowman arrived to complete the purchase. Terry Duncan instructed Agent Bowman to go to the room and to deal with his "worker"; it was only upon her refusal that Terry Duncan went to the room and Dwight Lindsey went outside. These circumstances indicate that had it not been for Agent Bowman's reluctance to deal with a stranger, Dwight Lindsey would have handled the actual exchange of the cocaine. In addition, the State produced evidence that Dwight Lindsey was the driver of the green Chevrolet in which was found white powder residue from the same source as the three ounces of cocaine. These circumstances are sufficiently substantial evidence of Dwight Lindsey's participation in the crimes to overrule his motion for dismissal.

Each of the defendants received a fair trial free from prejudicial error.

No error.

Chief Judge HEDRICK and Judge WELLS concur.