STATE OF NORTH CAROLINA v. LETISHA DAWN BEAM

No. COA09-422

(Filed 5 January 2010)

**1 Drugs— trafficking by delivery—actual delivery not required**

An attempted delivery of a controlled substance satisfied the statutory definition of delivery. Actual delivery was not required.

**2. Drugs— trafficking 28 grams—sufficiency of evidence— prescription bottles**

The trial court correctly denied defendant's motion to dismiss charges of trafficking in 28 grams of an opium derivative where the tablets were found in prescription bottles. The prescription labels were nearly a year old and defendant offered no evidence that she had not taken any of the tablets. Taken in the light most favorable to the State, the evidence did not establish that defendant was entitled to the statutory exemption from prosecution; the trial court correctly submitted to the jury the issue of whether defendant was authorized to possess the tablets.

**3. Criminal Law— entrapment—not established as a matter of law**

The trial court correctly denied defendant's motion to dismiss a narcotics prosecution based on the defense of entrapment, and properly submitted the issue to the jury, where defendant agreed to sell the drugs the same day that she encountered the confidential informant at a treatment clinic, there was no series of meetings or ensuing bonding conversations, and defendant had already taken a drug the day before and cannot argue that she was induced back into her drug habit with the promise of tablets.

The undisputed testimony and required inferences did not compel a finding that defendant was inducted to commit an act which she was not predisposed to commit.

Appeal by defendant from judgment entered 10 October 2008 by Judge Mark E. Klass in Cabarrus County Superior Court. Heard in the Court of Appeals 30 September 2009.

*Attorney General Roy Cooper, by Assistant Attorney General David W. Boone, for the State.*

*Robert W. Ewing for defendant-appellant.*

STEELMAN, Judge.

Under the language of N.C. Gen. Stat. § 90-87(7), an attempted delivery of a controlled substance satisfies the statutory definition of delivery. While the State bore the burden of proof to establish the elements of drug offenses under N.C. Gen. Stat. § 90-95, defendant was required to prove an exemption from prosecution under N.C. Gen. Stat. § 90-113.1(a). Defendant's evidence did not establish as a matter of law that she was legally authorized to possess the Lortab tablets. When the evidence presented did not compel a holding that defendant was induced into taking an action which she was not predisposed to take, the trial court correctly held that defendant was not entitled to the dismissal of the charges based upon entrapment, and submitted the issue to the jury.

## I. Factual and Procedural Background

Letisha Dawn Beam (defendant) is a recovering drug addict. On Saturday 5 November 2005, defendant drove to the McLeod Center, a narcotic treatment clinic, to receive her daily dose of methadone. Defendant also received an additional dose of methadone since the McLeod Center is closed on Sundays. Defendant saw Randy Davis (Davis) while waiting in line. Davis was working as a confidential informant with the Kannapolis Police Department. He told defendant that if she would give him a ride, he would give her some Klonopin tablets. Defendant did not give Davis a ride, but did give him her cell phone number.

Later that afternoon, defendant checked her cell phone and discovered that Davis had "left a bunch of messages," wanting defendant to come to his residence. Defendant drove to Davis' residence, and they took ten to fifteen Klonopin tablets. Defendant had also taken

Xanax earlier that day. While defendant was at Davis' residence, Davis called a person he described as his brother.

The person Davis actually called was Detective Tim Roth (Detective Roth). Detective Roth works in the vice/narcotics unit of the Kannapolis Police Department, and his job duties include working undercover as either a drug user or seller. Defendant spoke on the phone with Detective Roth and discussed the sale of Lortab tablets and liquid methadone. Detective Roth testified that defendant identified herself as "Letisha" and told him that she would sell seventy-five hydrocodone tablets (Lortab) for five dollars per tablet and some liquid methadone for one hundred dollars. Defendant confirmed to Detective Roth that one of the bottles of methadone was still sealed.

Defendant and Detective Roth agreed to meet in the parking lot of a Circle K store to transfer the drugs. Detective Roth informed his supervisor, Lieutenant Pat Patty (Lieutenant Patty), of the agreement and asked Lieutenant Patty to provide back-up and to operate audio equipment. Lieutenant Patty monitored the transaction by listening to a "wire," which Detective Roth wore during the transaction.

Detective Roth wore plain clothes and drove an unmarked, red Expedition to the Circle K parking lot. Lieutenant Patty wore his police uniform, drove a marked patrol vehicle, and parked at Rowan-Cabarrus Community College, which is next to the Circle K. A short time later, defendant pulled into the Circle K parking lot in a black vehicle. Davis was in the passenger seat of defendant's vehicle.

Davis exited defendant's vehicle and went inside the store, and Detective Roth got into defendant's vehicle. Detective Roth asked defendant where the drugs were, and she told him that the drugs were in the trunk of her vehicle. Defendant exited the vehicle, went to the trunk, and returned with her purse, which contained two amber pill bottles and the liquid methadone. Detective Roth exited the vehicle and told defendant he needed to get the money. He opened his vehicle door and gave Lieutenant Patty the code word signaling that the deal was completed. Detective Roth got back into defendant's vehicle, and she told him to put the money on the dashboard. Detective Roth testified that defendant never touched the money. Lieutenant Patty drove his patrol vehicle beside defendant's vehicle, and Detective Roth told her that she was under arrest. At the time she was arrested, defendant had the two pill bottles in one hand and a bottle of methadone in the other hand. Detective Roth also recovered another bottle of methadone from defendant's purse.

Defendant waived her Miranda rights and gave a voluntary statement to Detective Roth. Several items were seized as evidence, including two "plastic containers counting a total of seventy three blue capsule shaped tablets with imprint Watson 550," and two plastic containers containing a red liquid. These items were sent to the North Carolina SBI lab for analysis.

Agent Lisa Edwards (Agent Edwards), a forensic drug chemist, testified for the State. Agent Edwards stated it was her opinion that the seventy-three blue capsule-shaped tablets were Lortab, Schedule II hydrocodone, which is an opium derivative. The tablets had a total weight of 47.44 grams. She further stated it was her opinion that the two bottles containing red liquid were methadone, a Schedule II controlled substance.

Defendant was indicted on one count of felonious possession of methadone with intent to sell and deliver, and one count of trafficking opium or an opium derivative by possession, one count of trafficking opium or an opium derivative by transportation, and one count of trafficking opium or an opium derivative by delivery. Defendant was found guilty of all charges. The offenses were consolidated for judgment, and defendant was sentenced to an active prison term of 225 to 279 months.

Defendant appeals.

## II.  Motion to Dismiss

Defendant brings forward three arguments on appeal, all of which are based on the trial court's denial of her motion to dismiss at the conclusion of all the evidence based upon insufficiency of the evidence. We discuss each in turn.

## A.  Standard of Review

The denial of a motion to dismiss for insufficient evidence is a question of law, which this Court reviews *de novo*. *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted). The question for this Court upon review is " 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Blizzard*, 169 N.C. App. 285, 289, 610 S.E.2d 245, 249 (2005) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). Evidence is substantial if it is relevant, not seeming or

imaginary, and a reasonable mind might accept it as adequate to support a conclusion. *State v. Thaggard*, 168 N.C. App. 263, 281, 608 S.E.2d 774, 786 (2005) (citations omitted). In considering the motion, the trial court must view the evidence in the light most favorable to the State and give the State every reasonable inference. *Id.* (citing *State v. Gibson*, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995)). "Contradictions and discrepancies must be resolved in favor of the State, and the defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984) (internal citations omitted). Because defendant presented evidence at trial, she waived her right to appeal the denial of her motion to dismiss at the close of the State's evidence; therefore, only the motion to dismiss at the close of all the evidence is before this Court. *State v. Mash*, 328 N.C. 61, 66, 399 S.E.2d 307, 311 (1991) (citing *Bullard*, 312 N.C. 129, 322 S.E.2d 370).

### B. Trafficking an Opium Derivative by Delivery

**[1]** In her first argument, defendant contends the trial court erred in denying her motion to dismiss the charge of trafficking in an opium derivative by delivery based on insufficiency of the evidence, arguing that no actual delivery occurred. We disagree.

A person is guilty of the Class C felony of trafficking in an opium derivative by delivery if that person:

(1) knowingly delivered an opium derivative to another person

(2) the amount delivered was twenty-eight grams or more

N.C. Gen. Stat. § 90-95(h)(4) (2007)[1]; *see also* N.C.P.I.—Crim. 260.23 (2009).

Defendant only argues that no actual delivery occurred; she makes no argument that she was not in possession of the drugs, nor that she did not attempt to deliver the drugs. For purposes of the North Carolina Controlled Substances Act, delivery "means the actual constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." N.C. Gen. Stat. § 90-87(7) (2007).

In *State v. Thrift*, we held that N.C. Gen. Stat. § 90-87(7) does not require an "actual delivery." This Court stated that a "delivery" occurs

---

1. This statute was modified by 2009 N.C. Sess. Laws 463 and 2009 N.C. Sess. Laws 473, but neither modified the above-cited portion of the statute.

when there is an actual, constructive, or attempted transfer from one person to another of a controlled substance. *Thrift*, 78 N.C. App. 199, 201, 336 S.E.2d 861, 862 (1985) (quoting *State v. Creason*, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985)), *appeal dismissed and disc. review denied*, 316 N.C. 557, 344 S.E.2d 15 (1986).

To prove an "attempt," there must be substantial evidence that defendant intended to commit the offense and performed an overt act, beyond mere preparation, but fell short of completing the offense. *State v. Shook*, 155 N.C. App. 183, 187, 573 S.E.2d 249, 252 (2002) (citing *State v. Gray*, 58 N.C. App. 102, 106, 293 S.E.2d 274, 277, *disc. review denied*, 306 N.C. 746, 295 S.E.2d 482 (1982)). In the instant case, defendant admitted to getting out of her vehicle, going to the trunk of her vehicle, and retrieving her purse, which contained the drugs. The State presented evidence through Detective Roth's testimony that she then re-entered the vehicle, took the drugs out of her purse, and told Detective Roth to put the money on the dashboard of her vehicle. Defendant was arrested before handing Detective Roth the drugs. This testimony, viewed in the light most favorable to the State, was sufficient to support submission of this offense to the jury.

By the plain language of the statute, an attempted delivery of a controlled substance satisfied the statutory definition of delivery. N.C. Gen. Stat. § 90-87(7) (2007). No "actual delivery" was required. Consequently, we find no error in the trial court's denial of defendant's motion to dismiss the charge of trafficking in an opium derivative by delivery.

This argument is without merit.

### C. Trafficking Twenty-Eight Grams of Opium by Possession, Delivery and Transportation

[2] In her second argument, defendant contends that the trial court erred in denying her motion to dismiss the charges of trafficking twenty-eight grams or more of an opium derivative by possession, transportation and delivery based on the insufficiency of the evidence because a portion of the opium derivative in defendant's possession was legally prescribed to her. We disagree.

Defendant was convicted of the Class C felony of trafficking in an opiate derivative weighing twenty-eight grams or more. Defendant argues that if the number of tablets that were legally prescribed to her are excluded, the weight would be below twenty-eight grams. This would reduce the offense from a Class C felony to a Class E felony,

and require the imposition of a shorter sentence. N.C. Gen. Stat. § 90-95(h)(4)(b); -95(h)(4)(c) (2007)[2].

N.C. Gen. Stat. § 90-95 makes the possession, transportation or delivery of a controlled substance a crime. Opium, and its derivatives, is a Schedule II controlled substance. N.C. Gen. Stat. § 90-90(1)(a); -90(1)(b) (2007). The possession, transportation or delivery of an opium derivative is unlawful unless it is authorized under an appropriate section of the Controlled Substances Act. N.C. Gen. Stat. § 90-95(a) (2007). "[O]ne may be exempt from State prosecution for the possession or the sale or delivery of controlled substances if that person is authorized by the North Carolina Controlled Substances Act to so possess or sell or deliver such substances." *State v. McNeil*, 47 N.C. App. 30, 38, 266 S.E.2d 824, 829 (1980) (citations omitted), *appeal dismissed and disc. review denied*, 301 N.C. 102, 273 S.E.2d 306 (1980).

The State "carries the burden of proof—beyond a reasonable doubt—in all criminal cases." *State v. Little*, 191 N.C. App. 655, 661, 664 S.E.2d 432, 436-37, *disc. review denied*, 362 N.C. 685, 671 S.E.2d 326 (2008). However, in a prosecution under N.C. Gen. Stat. § 90-95, it is the defendant's burden to establish that an exemption from its provisions is applicable. N.C. Gen. Stat. § 90-113.1 provides:

(a) It shall not be necessary for the State to negate any exemption or exception set forth in this Article in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this Article, and the burden of proof of any such exemption or exception shall be upon the person claiming its benefit.

N.C. Gen. Stat. § 90-113.1(a) (2007). This section does not shift the burden of proof from the State to establish all the necessary elements of an offense under Chapter 90; it merely places the burden of proof on defendant to establish that she is entitled to an exemption under its provisions. *McNeil*, 47 N.C. App. at 40, 266 S.E.2d at 829.

In the instant case, defendant argues that "she was partially exempt from [N.C. Gen. Stat. § 90-95(h)(4)(c)] because forty of the hydrocodone pills seized from her person were legally prescribed to her." The two pill bottles obtained from defendant each had prescription labels for a total of forty pills. Detective Roth testified that one

---

2. This statute was modified by 2009 N.C. Sess. Laws 463 and 2009 N.C. Sess. Laws 473, but neither modified the above-cited portion of the statute.

of the prescription labels was dated 3 January 2005 and in defendant's name for a total of twenty Lortab tablets. The "use-before" date was 3 January 2006. The second pill bottle had a prescription label dated 10 February 2005 in defendant's name for a total of twenty Lortab tablets. The "use-before" date was 10 February 2006.

Defendant testified that she received prescriptions for Lortab tablets from three physicians: Dr. Fruchtman, Dr. Furr, and Dr. Gibbs. This testimony was only corroborated as to Dr. Gibbs, whose office manager, Lisa Lampton (Lampton), testified at trial. Lampton testified that defendant was prescribed twelve tablets on 15 October 2001 and another twelve tablets on 1 November 2001. Lampton further testified that after those two prescriptions, defendant was not seen by Dr. Gibbs' office again until 2006.

This was the only evidence offered by defendant to prove that she was authorized to possess the controlled substances. No testimony was presented as to what physician issued the prescriptions for the tablets contained in the two pill bottles seized by Detective Roth, and the labels from the two pill bottles were not included in the record on appeal. We note that the prescription labels on the two pill bottles were nearly a year old on the date of defendant's arrest. Defendant offered no evidence or testimony that she had not taken any of the Lortab tablets prescribed to her in January and February 2005. No evidence was presented that she was authorized to sell or deliver the controlled substances.

Whenever a defendant puts on evidence, it is not to be considered by the trial court upon defendant's motion to dismiss unless favorable to the State. *Bullard*, 312 N.C. at 160, 322 S.E.2d at 388. The evidence presented, taken in the light most favorable to the State, failed to establish that she was entitled, as a matter of law, to an exemption under the provisions of N.C. Gen. Stat. § 90-113.1. The trial court did not err by denying defendant's motion to dismiss, and the issue of whether defendant was authorized to possess forty Lortab tablets was correctly submitted to the jury. It was within the province of the jury to weigh the credibility of the testimony and decide whether defendant was authorized to possess a portion of the Lortab tablets. See *State v. Moore*, 188 N.C. App. 416, 422, 656 S.E.2d 287, 291 (2008) (citations and quotations omitted).

This argument is without merit.

STATE v. BEAM

[201 N.C. App. 643 (2010)]

## D. Entrapment

[3] In her third argument, defendant contends that the trial court erred in denying her motion to dismiss based upon insufficiency of the evidence because the evidence established the defense of entrapment as a matter of law. We disagree.

> It is the general rule that where the criminal intent and design originates in the mind of one other than the defendant, and the defendant is, by persuasion, trickery or fraud, incited and induced to commit the crime charged in order to prosecute him for it, when he would not have committed the crime, except for such incitements and inducements, these circumstances constitute entrapment and a valid defense.

*State v. Stanley*, 288 N.C. 19, 28, 215 S.E.2d 589, 595 (1975) (citations omitted). Entrapment is an affirmative defense, and the burden of proof lies with defendant. *State v. Hageman*, 307 N.C. 1, 28, 296 S.E.2d 433, 448 (1982); *see also* N.C.P.I.-Crim. 309.10 (2009).

Entrapment is not available as a defense if defendant has a predisposition to commit the crime, independent of any governmental inducement and influence. *Hageman*, 307 N.C. at 29, 296 S.E.2d at 449. "The fact that governmental officials merely afford opportunities or facilities for the commission of the offense is, standing alone, not enough to give rise to the defense of entrapment." *Id.* at 30, 296 S.E.2d at 449 (citing *Sorrells v. United States*, 287 U.S. 435, 77 L. Ed. 413 (1932)). If the evidence raises the issue of entrapment, it is ordinarily a question of fact for the jury, but the trial court can find entrapment as a matter of law when the undisputed testimony and required inferences compel a finding that defendant was induced by the government officials into an action for which he was not predisposed to take. *Stanley*, 288 N.C. at 30, 215 S.E.2d at 597 (citations omitted).

Defendant argues that she was "enticed by the confidential informer to not only sell narcotics but also by luring the defendant into her drug habit by providing the narcotic Klonopin to her." She cites the case of *Sherman v. United States*, 356 U.S. 369, 2 L. Ed. 2d 848 (1958) in support of her argument of entrapment. In *Sherman*, the government informant had several meetings with defendant, many discussions of mutual experiences and problems, and repeated requests to obtain narcotics for the government informant. *Id.* at 371, 2 L. Ed. 2d at 850. The United States Supreme Court focused on the number of meetings and conversations between defendant and the

informant, and the fact that the government informant formed a bond with defendant and acted upon defendant's sympathy. *Id.* at 373, 2 L. Ed. 2d at 851-52.

In the instant case, defendant agreed to sell the drugs the same day that she encountered Davis at the McLeod Center. She testified that Davis was "a friend of my son's father's." She further testified that she did not know how to get to Davis' residence, and he had to meet her at the McLeod Center and give her directions. There were no series of meetings or ensuing bonding conversations between defendant and Davis. Neither can defendant argue that she was induced to commit the crime because Davis lured her back into her drug habit with the promise of Klonopin tablets. She testified that she had taken Xanax earlier that day before meeting Davis. We hold *Sherman* to be inapposite. This case is more factually similar to that of *State v. Duncan*, 75 N.C. App. 38, 330 S.E.2d 481, *disc. review denied*, 314 N.C. 544, 335 S.E.2d 317 (1985).

In *Duncan*, defendant "readily agreed to obtain cocaine" for the undercover agent when requested to do so. *Id.* at 46, 330 S.E.2d at 487. Defendant contacted the undercover agent and gave her a phone number and directions to a hotel where the sale was to take place. Defendant then met the undercover agent and directed her to a specific room where the cocaine was hidden. At trial, defendant raised the defense of entrapment. This Court stated that predisposition to commit a crime " 'may be shown by a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant an opportunity to commit the crime.' " *Id.* at 47, 330 S.E.2d at 487-88 (quoting *Hageman*, 307 N.C. at 31, 296 S.E.2d at 450).

In the instant case, the undisputed testimony and required inferences did not compel a finding that defendant was induced to commit an act which she was not predisposed to commit. *Stanley*, 288 N.C. at 32, 215 S.E.2d at 597. Defendant readily agreed to participate in the drug transaction and to sell Lortab tablets and methadone to Detective Roth. She testified that no one forced her to take Klonopin tablets at Davis' residence, and she drove herself to the Circle K to sell the drugs to Detective Roth. Detective Roth testified that defendant was the one who set the price for the sale of both the Lortab tablets and the methadone. The evidence establishes that defendant readily agreed to sell the narcotics, and Detective Roth merely afforded her an opportunity to do so.

Whenever a defendant puts on evidence, it is not to be taken into consideration by the trial court upon defendant's motion to dismiss unless favorable to the State. *Bullard*, 312 N.C. at 160, 322 S.E.2d at 387-88. The evidence presented, viewed in the light most favorable to the State, failed to establish that she was entitled to the defense of entrapment as a matter of law. The trial court did not err by denying defendant's motion to dismiss, and the issue of entrapment was properly submitted to the jury. It was within the province of the jury to weigh the credibility of the testimony. They chose not to believe defendant and concluded she had not met her burden of proof establishing the defense of entrapment. See *Moore*, 188 N.C. App. at 422, 656 S.E.2d at 291.

This argument is without merit.

Defendant has failed to argue her remaining assignments of error in her brief, and they are thus deemed abandoned pursuant to Rule 28(b)(6) of the Rules of Appellate Procedure.

NO ERROR.

Judges McGEE and JACKSON concur.